1    Craig E. Stewart (State Bar No. 129530)
      cestewart@jonesday.com
2    JONES DAY
      555 California Street, 26th Floor
3    San Francisco, California 94104
      Telephone:    415.626.3939
4    Facsimile:    415.875.5700

5    Darren K. Cottriel (State Bar No. 184731)
      dcottriel@jonesday.com
6    JONES DAY
      3161 Michelson Drive, Suite 800
7    Irvine, CA 92612
      Telephone:    949.553.7548
8    Facsimile:    949.553.7539

9    Attorneys for Defendant
      PLANTRONICS, INC.

10

11                              UNITED STATES DISTRICT COURT

12                        NORTHERN DISTRICT OF CALIFORNIA

13                                  SAN JOSE DIVISION

14

| | |
|---|---|
| 15   PHIL SHIN on behalf of himself and all others similarly situated, | **Case No. 5:18-cv-05626-NMC** |
| 16 | **DEFENDANT PLANTRONICS, INC.'S MOTION TO DISMISS** |
| 17                  Plaintiff, | |
|         v. | Date:          January 9, 2019 |
| 18 | Time:         1:00 p.m. |
|    PLANTRONICS, INC., | Place:        Courtroom 7 – 4th Floor |
| 19 | |
|             Defendant. | |
| 20 | |

21

22

23

24

25

26

27

28

1

2

## **TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ........................................................................................ 1

RELIEF SOUGHT ..................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

INTRODUCTION ...................................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................................... 2

BACKGROUND ........................................................................................................................ 3

ARGUMENT .............................................................................................................................. 5

I.      LEGAL STANDARDS .................................................................................................. 5

II.     PLAINTIFF CANNOT MAINTAIN HIS BREACH OF WARRANTY CLAIMS. .......... 6

        A.     The Breach of Express Warranty Claims (I & III) Fail Because Plantronics
               Complied with the Warranty. ........................................................................... 6

        B.     Plaintiff's Breach of Implied Warranty Claims (II, IV & V) Fail Because
               Plantronics Validly Disclaimed any Implied Warranty. ........................................ 9

        C.     Even if the Court Were to Find the Limited Warranty is Not Applicable,
               the Breach of Implied Warranty Claims Still Fail. ................................................ 10

        D.     The Breach of Warranty Claims (I–V) also Fail because Plaintiff Failed to
               Give Plantronics the Requisite Pre-Suit Notice. ................................................... 11

III.    PLAINTIFF'S FRAUD-BASED CLAIMS (VI-VIII) MUST BE DISMISSED
        BECAUSE PLAINTIFF FAILS TO ADEQUATELY ALLEGE PLANTRONICS'
        KNOWLEDGE OF ANY DEFECT. ............................................................................. 13

IV.     THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE A
        DEFECT ........................................................................................................................ 16

CONCLUSION ......................................................................................................................... 18

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

**CASES**

4

5

*Am. Suzuki Motor Corp. v. Superior Court*,
    37 Cal. App. 4th 1291 (1995)......................................................................................11

6

7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................................5

8

9

*Baba v. Hewlett-Packard Co.*,
    No. CV 09-05946 RS, 2011 WL 317650 (N.D. Cal. Jan. 28, 2011) ..........................14

10

11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................................5

12

13

*Berenblat v. Apple, Inc.*,
    No. 08-4969 JF (PVT), 2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ........................15

14

15

*Bros. v. Hewlett-Packard Co.*,
    No. C-06-02254RMW, 2007 WL 485979 (N.D. Cal. Feb. 12, 2007) ...........................8

16

17

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008)......................................................................................10

18

*Coleman-Anacleto v. Samsung Electronics America, Inc.*,
    No. 16-CV-02941-LHK, 2016 WL 4729302 (N.D. Cal., Sept. 12, 2016)..................13

19

20

*Davidson v. Apple, Inc.*,
    No. 16-CV-04942-LHK, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ........................9

21

22

*Donohue v. Apple, Inc.*,
    871 F. Supp. 2d 913 (N.D. Cal. 2012) ........................................................................17

23

24

*Elias v. Hewlett-Packard Co.*,
    No. 12-CV-00421-LHK, 2014 WL 493034 (N.D. Cal. Feb. 5, 2014)..........................17

25

26

*Ferranti v. Hewlett-Packard Co.*,
    No. 5:13-CV-03847-EJD, 2014 WL 4647962 (N.D. Cal. Sept. 16, 2014) ...................8

27

*Frenzel v. AliphCom*,
    76 F. Supp. 3d 999 (N.D. Cal. 2014) .....................................................................9, 10

28

*Frenzel v. Aliphcom*,
No. 14-CV-03587-WHO, 2015 WL 4110811 (N.D. Cal. July 7, 2015)....................................9

*Grodzitsky v. Am. Honda Motor Co.*,
No. 2:12-CV-1142-SVW-PLA, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ........................15

*Henryhand v. Dorel Juvenile Grp., Inc.*,
No. CV1700180SJOAGRX, 2017 WL 7806590 (C.D. Cal. Oct. 5, 2017) ............................14

*Herremans v. BMW of N. Am., LLC*,
No. CV 14-02363 MMM ............................................................................................15, 17

*In re Google Phone Litig.*,
No. 10-CV-01177-EJD, 2012 WL 3155571 (N.D. Cal. Aug. 2, 2012) ....................................9

*In re Seagate Tech. LLC Litig.*,
233 F. Supp. 3d 776 (N.D. Cal. 2017) .........................................................................................8

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television
Litig.*,
758 F. Supp. 2d 1077 (S.D. Cal. 2010) ...................................................................................14

*Inter-Mark USA, Inc. v. Intuit, Inc.*,
No. C-07-04178 JCS, 2008 WL 552482 (N.D. Cal. Feb. 27, 2008)..........................................9

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009).....................................................................................................5

*Keith v. Buchanan*,
173 Cal. App. 3d 13 (1985)........................................................................................................11

*Kowalsky v. Hewlett-Packard Co.*,
No. 10-CV-02176-LHK, 2011 WL 3501715 (N.D. Cal. Aug. 10, 2011).................................17

*Minkler v. Apple, Inc.*,
65 F. Supp. 3d 810 (N.D. Cal. 2014) ..........................................................................................9

*Nygren v. Hewlett-Packard Co.*,
No. 07-cv-05793 JW, 2008 WL 11399759 (N.D. Cal. Oct. 24, 2008) ......................................7

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008) .....................................................................................14

*Rice v. Sunbeam*,
No. CV 12-7923-CAS-(AJWx), 2013 WL 146270 (C.D. Cal. Jan. 7, 2013) ..........................15

*Stearns v. Select Comfort Retail Corp.*,
   No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ...................................9

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)...................................................................................5

*Weeks v. Google LLC*,
   No. 18-CV-00801 NC, 2018 WL 3933398 (N.D. Cal. Aug. 16, 2018) ...........7, 8, 10

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ...............................................................................17

**STATUTES**

California Commercial Code § 2314 ...............................................................................10

California Song-Beverly Act............................................................................................4

Consumer Legal Remedies Act...........................................................................4, 5, 15, 16

Magnuson-Moss Warranty Act ........................................................................................4

California Business & Professions Code §17200 *et seq.* ...........................................5, 16

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 9(b) .........................................................................5, 16

Federal Rule of Civil Procedure 12(b)(6) ........................................................................1

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on January 9, 2019, at 1:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 7 of this Court, located at 280 South 1st Street, San Jose, CA 95113, before the Honorable Nathanael M. Cousins, defendant Plantronics, Inc. will and hereby does move to dismiss plaintiff Phil Shin's Class Action Complaint, Dkt. No. 1, in accordance with Federal Rule of Civil Procedure 12(b)(6).

**RELIEF SOUGHT**

Dismissal of all claims in defendant's favor.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiff alleges that Plantronics BackBeat FIT wireless headphones ("Headphones") contain "one or more defects" that cause their battery to fail prematurely. He asserts that Plantronics had a duty to disclose this purported defect and engaged in consumer fraud and false advertising when it advertised the Headphones as being sweatproof and waterproof and having a battery that lasts up to 8 hours on a charge. But these claims are based solely on plaintiff's own headphones allegedly failing to hold a charge and on some anonymous and unsubstantiated online consumer reviews. That is not enough to show that the Headphones are defective generally, as opposed to some individual units allegedly failing. Nor is it sufficient to support plaintiff's conclusory allegation that Plantronics knew of the alleged defect.

The complaint should accordingly be dismissed for failure to state a claim. Plaintiff cannot maintain a viable claim by conclusorily alleging that all Headphones sold by Plantronics are defective. Plantronics sold over 1 million Headphones. Yet, plaintiff cites 28 online consumer reviews to substantiate his claim. But this small unverifiable sample cannot logically justify plaintiff's conclusion that all Headphones are defective. Even accepting the consumer complaints as true, they show only that a handful of the more than a million Headphones sold by Plantronics did not meet consumer expectations. The possibility of failure from any innumerable other causes is precisely why Plantronics—and most every other manufacturer—offers a Limited Warranty. The fact that some purchasers may have a valid warranty claim does not mean that the

manufacturer engaged in consumer fraud or false advertising.

Plaintiff's consumer fraud claims also fail because the bare existence of some consumer complaints does not support any conclusion that the manufacturer knew that the product was allegedly defective.  To the contrary, courts in this district have found that consumer complaints are insufficient to establish the requisite knowledge to trigger a duty to disclose.  And the alleged consumer complaints here are particularly insufficient because they were all posted after plaintiff purchased his headphones and therefore prove nothing about Plantronics' purported knowledge at the time plaintiff purchased his Headphones.

Because plaintiff concedes Plantronics offers a warranty and acknowledges that he took advantage of that warranty, his breach of warranty claims fail as well.  Plaintiff's sole remedy is Plantronics' Limited Warranty—which disclaims all other warranties and provides that Plantronics will repair or replace any defective product.  Plaintiff concedes Plantronics honored the warranty by sending plaintiff replacement headphones.  Nor does he allege that Plantronics failed to honor the warranty for any other consumer who submitted a valid claim.  That defeats his breach of warranty claims.  And although plaintiff alleges the replacements he received were also defective, this Court has held that, even when a manufacturer provides a defective replacement, this in and of itself does not constitute a breach of warranty.  The relevant question is whether the manufacturer responded appropriately under the express warranty.

In short, the complaint is devoid of non-conclusory factual allegations sufficient to support a claim.  The Court should dismiss the Complaint in its entirety.

## STATEMENT OF ISSUES TO BE DECIDED

1.     Has plaintiff stated a valid claim for breach of express and implied warranty when Plantronics fulfilled its obligations under the applicable Limited Warranty?

2.     Has plaintiff alleged a valid claim for breach of implied warranty even though he lacks the requisite vertical privity with Plantronics?

3.     Has plaintiff stated a valid claim for breach of the implied warranty of fitness for a particular purpose, when he does not allege any facts showing that he had a particular purpose for Plantronics' Headphones different from their ordinary purpose?

1        4.       Has plaintiff stated a valid claim for breach of express and implied warranty when

2    he failed to give Plantronics pre-suit notice of the alleged defect?

3        5.       Has plaintiff alleged sufficient facts to show, for purposes of plaintiff's fraud based

4    claims, a defect in the Headphones and that Plantronics knew of the alleged defect and false

5    statements?

6                              **BACKGROUND**

7          Plaintiff sues on behalf of an alleged nationwide class of consumers that purchased

8    Plantronics' BackBeat FIT wireless headphones.  *See* Compl. ¶ 42.  According to plaintiff,

9    Plantronics markets the Headphones as being sweatproof and waterproof, and having a battery

10   life that lasts "up to 8 hours," all the while knowing that these statements are false and

11   misleading.  *See id.* ¶¶ 1–8, 13–24.  Plaintiff asserts the Headphones "contain one or more defects

12   that cause the battery life to diminish and eventually stop retaining a charge after normal usage,

13   especially when the Headphones are exposed to sweat or water."  *See id.* ¶ 4.  Plaintiff

14   conclusorily alleges that Plantronics knew of this alleged defect and fraudulently omitted and

15   misrepresented these qualities to consumers.  *See id.* ¶ 6.

16         Plaintiff asserts that he purchased his Headphones in March 2015 from Amazon.com.  *See*

17   *id.* ¶ 27.  He says that, before purchasing them, he reviewed "marketing information" on

18   Amazon's website that described the Headphones "as waterproof and sweatproof, and as

19   providing up to eight hours of listening time on a single charge."  *Id.* ¶ 28.  According to plaintiff,

20   however, the Headphones "experience rapidly diminishing battery life" "in part due to the

21   Heaphones' failure to resist sweat and water."  *Id.* ¶ 5.  Plaintiff alleges he used the Headphones

22   "during runs" and "exposed" them to "sweat *and/or* water."  *Id.* ¶ 30 (emphasis added).  And

23   consequently, ten months later, in mid-January 2016 he noticed the "Headphones were becoming

24   difficult to charge" and one week later "failed to power."  *Id.* ¶ 31.

25         Nowhere in the complaint does plaintiff allege any facts regarding which part or

26   component of the Headphones is defective or the nature of the defect.  He does not, for example,

27   state whether the defect is in the battery itself or in some other part of the Headphones that affects

28   the battery.  He alleges that unidentified defect results in the battery not holding a charge,

1    "especially when the Headphones are exposed to sweat or water." *Id.* ¶ 4.  But he does not allege

2    how much sweat or water he exposed the Headphones to.  In fact, he appears to be unable to

3    decide whether he exposed them to sweat, water, or both. *See id.* ¶¶ 4, 30.  Instead, plaintiff asks

4    the Court to trust his personal judgment that, because of alleged exposure to some unidentified

5    quantity of sweat *or* water, the batteries systematically fail.

6        Nor does plaintiff allege that he tested the Headphones' resistance to moisture or offer any

7    other facts to show that the Headphones' battery is diminished as a result of exposure to a certain

8    amount of moisture.  Plaintiff does not even allege the battery life of the Headphones.  He claims

9    the Headphones "fail to retain an *adequate* charge" or for "a *reasonable* amount of time," but

10   does not allege what an "adequate" or "reasonable" charge consists of—whether seven hours, two

11   hours, or some other amount of time. *Id.* ¶¶ 5, 8 (emphasis added).  Based on plaintiff's

12   experience and that of a handful of anonymous consumers who posted online reviews, he

13   conclusorily alleges that "***none*** of the Headphones" sold by Plantronics "have a battery that can

14   be consistently used for eight hours without further charging." *Id.* ¶ 17 (emphasis added).

15       Plaintiff further alleges that, under "Plantronics' one-year warranty," he and other

16   consumers have returned defective Headphones but the replacements have contained the "exact

17   same defects." *Id.* ¶¶ 6, 33.  But plaintiff does not allege when his replacement Headphones

18   stopped working and why. *See id.* ¶ 33.  And he does not and cannot allege why the alleged

19   replacement Headphones of unidentified consumers stopped working. *See id.* ¶ 6.

20       Plaintiff's sole claim of injury is that, if he had been informed of the alleged unidentified

21   defects, he "would have paid less" to purchase the Headphones. *Id.* ¶ 7.  He does not identify

22   how much he was willing to pay for the Headphones versus the amount he paid. *See id.*

23       Based on these vague and conclusory allegations, plaintiff asserts claims for violation of

24   express and implied warranties under the Magnuson-Moss Warranty Act and California Song-

25   Beverly Act, as well as claims under the California Consumer Legal Remedies Act ("CLRA"),

26   California's Unfair Competition Law (Bus. & Prof. Code § 17200 *et seq.*) ("UCL"), and common

27   law fraud.

28

Defendant Plantronics, Inc.'s Motion to Dismiss
Case No. 5:18-cv-05626

1

**ARGUMENT**

2   **I.    LEGAL STANDARDS**

3          To survive a motion to dismiss, a complaint must plead sufficient factual matter, if

4   accepted as true, to state a claim for relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 556

5   U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiff must plead

6   "factual content that allows the court to draw the reasonable inference that the defendant is liable

7   for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  While allegations of material fact are

8   assumed to be true and viewed in the light most favorable to the plaintiff, the Court need not

9   accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact,

10  or unreasonable inferences.  *Id.* at 678–79.  Courts are "not bound to accept as true a legal

11  conclusion couched as a factual allegation."  *Id.* at 678 (internal citation omitted).

12         When alleging a claim sounding in fraud, a plaintiff must plead the fraud with

13  particularity.  *See* FED. R. CIV. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

14  1103 (9th Cir. 2003).  "Averments of fraud must be accompanied by the who, what, when, where,

15  and how of the misconduct charged."  *Vess*, 317 F.3d at 1106 (internal quotation marks omitted).

16  A "plaintiff must set forth what is false or misleading about a statement, and why it is false."  *Id.*

17  (internal quotation marks omitted).  This is true as well for claims under the UCL or CLRA that

18  are "'grounded in fraud' or . . . 'sound in fraud.'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

19  1125 (9th Cir. 2009) (*quoting Vess*, 317 F.3d at 1103–04)); *see also Elias v. Hewlett-Packard Co.*

20  903 F. Supp. 2d 843, 853 (N.D. Cal. 2012) ("Claims sounding in fraud . . . are subject to the

21  heightened pleading requirements of Federal Rule of Civil Procedure 9(b)"); *Rasmussen v. Apple*

22  *Inc.*, 27 F. Supp. 3d 1027, 1043 (N.D. Cal. 2014) (analyzing UCL and CLRA claims under Rule

23  9(b)); *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1025 (N.D. Cal. 2012) ("Rule 9(b)'s

24  heightened pleading standards apply to all UCL . . . or CLRA claims that are grounded in

25  fraud.").

26

27

28

II.     **PLAINTIFF CANNOT MAINTAIN HIS BREACH OF WARRANTY CLAIMS.**

   A.     **The Breach of Express Warranty Claims (I & III) Fail Because Plantronics Complied with the Warranty.**

Plaintiff's breach of express and implied warranty claims (I–V) must be dismissed because Plantronics' Limited Warranty is his "exclusive remedy" for the alleged defective Headphones.  The Limited Warranty provides in relevant part:

> During the Warranty Period Plantronics will repair or replace, at its option, products that manifest defects in materials or workmanship if you provide notice to Plantronics and return the product to Plantronics in the manner described below.
>
> *          *          *          *          *
>
> In the unlikely event that your product has recurring failures or Plantronics is unable to repair or replace the product, Plantronics will provide you with a replacement product selected by Plantronics that is the same or equivalent to your product in performance. **This is your exclusive remedy for a defective product**.
>
> PLANTRONICS MAKES NO OTHER EXPRESS WARRANTY WHETHER WRITTEN OR ORAL AND PLANTRONICS **EXPRESSLY DISCLAIMS ALL WARRANTIES AND CONDITIONS NOT STATED IN THIS LIMITED WARRANTY**. . . .  **PLANTRONICS DISCLAIMS ALL IMPLIED WARRANTIES OR CONDITIONS**, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

Eister Decl., Ex. 1 at 2–3 (emphases added).[1]

---

[1]      Plantronics requests that the Court take judicial notice of the Limited Warranty.  "[A] court may take judicial notice of a material that is submitted as part of the complaint, or is necessarily relied upon by the complaint, as well as matters of public record."  *Lee v. Thornburg Mortg. Home Loans Inc.*, No. 14-CV-00602 NC, 2014 WL 4953966, at *4 (N.D. Cal. Sept. 29, 2014).  Plaintiff's allegations explicitly refer to the warranty.  *See* Compl. ¶¶ 6, 33.  As explained in the declarations of Sharon Easterly ("Easterly Decl.") and Robert Eister ("Eister Decl."), the Limited Warranty was the applicable warranty when plaintiff purchased his Headphones and during the alleged class period.
   Because plaintiff refers to the limited warranty in the complaint, the Court may treat the warranty as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Courts in this district have taken judicial notice of warranties referred to in a plaintiff's complaint.  *See, e.g.*, *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1176 n.5 (N.D. Cal. 2017) ("Because plaintiffs' allegations explicitly refer to and rely on Nissan's express warranty and its terms, . . . I GRANT Nissan's request for judicial notice."); *Cover v. Windsor Surry Co.*, No. 14-CV-05262-WHO, 2016 WL 520991, at *2 (N.D. Cal. Feb. 10, 2016)

1    Plaintiff acknowledges Plantronics' warranty applies, but maintains that, because he was

2    given defective replacements, he can maintain claims for breach of implied and express

3    warranties.  *See* Compl. ¶¶ 6, 33, 53–126.  But plaintiff cannot bypass the Limited Warranty

4    simply because the replacements he received were allegedly defective.  Instead, under the Limited

5    Warranty, plaintiff may only receive another replacement product "that is the same or equivalent"

6    to the Headphones in performance as provided for in the warranty.  Eister Decl. Ex. 1 at 3.

7    Moreover, the Limited Warranty applies equally to a replacement product for a period of twelve

8    months following the replacement. *Id.*

9    Consistent with this explicit language, courts in this district have held that an express

10   warranty is not breached merely because a manufacturer provides a defective replacement.  *See,*

11   *e.g.*, *Nygren*, 2008 WL 11399759, at *5 ("Courts have held that a manufacturer does not breach

12   an express warranty if it offers to provide the remedies specified in the warranty.").  This Court

13   recently followed this authority in *Weeks v. Google LLC*, No. 18-CV-00801 NC, 2018 WL

14   3933398 (N.D. Cal. Aug. 16, 2018).  The plaintiffs there sued for breach of express warranty.

15   (granting the defendant's request for judicial notice of a warranty because the plaintiff did not
     dispute the accuracy of the warranty and quoted directly from it in his complaint); *Hoey v. Sony*
16   *Elecs. Inc.*, 515 F. Supp. 2d 1099, 1103 (N.D. Cal. 2007) (granting Sony's request for judicial
     notice, at the motion to dismiss stage, of the express warranty provided for in its VAIO
17   notebooks); *Nygren v. Hewlett-Packard Co.*, No. C 07-05793 JW, 2008 WL 11399759, at *6, n.2
     (N.D. Cal. Oct. 24, 2008) ("Although Plaintiffs did not attach the Limited Warranty to the
18   Amended Complaint, it is referenced in the pleadings and thus, the Court considers it in its
     analysis"); *In re Google Phone Litig.*, No. 10-CV-01177-EJD, 2012 WL 3155571, at *7 (N.D.
19   Cal. Aug. 2, 2012) (considering Google's terms of sale in ruling on a motion to dismiss the
     plaintiff's breach of warranty claims because the terms were referenced in the complaint and
20   there was "no dispute as to [their] authenticity").  The Court should take judicial notice of the
     Limited Warranty because the warranty is relevant and plaintiff acknowledges and refers to it in
21   his complaint.  Moreover, the viability of plaintiff's breach of express and implied warranty
     claims are dependent on the limitations and disclaimers in the Limited Warranty.
22
23   The Limited Warranty may be considered on this motion to dismiss under the
     incorporation-by-reference doctrine.  Under the doctrine, courts may treat certain documents as
24   though they are part of the complaint once the defendant "attaches the document to its motion to
     dismiss." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  The doctrine prevents plaintiffs
25   from selecting only portions of a document to support their claims, while omitting parts that
     weaken their claims.  The doctrine may be applied "to situations in which the plaintiff's claim
26   depends on the contents of a document, the defendant attaches the document to its motion to
     dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff
27   does not explicitly allege the contents of that document in the complaint." *Id.*  The doctrine is
     applicable here.  Plaintiff refers to the Limited Warranty but omits attaching it to the complaint.
28   Accordingly, the Court may consider it.

1    *See id.* at *1–2.  They alleged that Google sold them smartphones with defective microphones and

2    that, when they submitted a claim to Google under the one-year limited warranty, Google gave

3    them equally defective replacements.  *See id.*  As plaintiff does here, they argued that the

4    defective replacements gave them a viable claim.  *See id.* at *4–8.  This Court disagreed, ruling

5    that merely providing a defective replacement is not a breach of warranty.  *See id.* at *5.  The

6    Court reasoned that the language of the warranty governs and no breach occurs when the

7    warranty provides only that a replacement will be given, with no promise that the replacement

8    might not itself require repair or replacement.  *See id.* at * 7 ("The question of whether it was

9    valid under the express warranty to replace a defective [smartphone] with another defective

10   [smartphone] must be answered in the affirmative based on a plain reading of the Limited

11   Warranty.").

12         Other courts have similarly found that when a defendant provides a replacement under a

13   warranty, even if it is defective, a plaintiff cannot maintain a viable claim for breach of express

14   warranty.  *See, e.g.*, *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 782 (N.D. Cal. 2017)

15   ("[T]he Court holds that failure of a replacement drive—which Plaintiffs characterize as

16   'replac[ing] defective Drives with defective Drives,' . . . is not in itself a breach of the express

17   terms of [the defendant's] warranty."); *Bros. v. Hewlett-Packard Co.*, No. C-06-02254RMW,

18   2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007) (finding that, even if a defective part was

19   replaced with another defective part, providing a replacement "is exactly what the [defendant's]

20   Limited Warranty provides" and thus the defendant "could not have breached the Limited

21   Warranty by acting in conformance with it."); *Ferranti v. Hewlett-Packard Co.*, No. 5:13-CV-

22   03847-EJD, 2014 WL 4647962, at *6 (N.D. Cal. Sept. 16, 2014) (dismissing breach of express

23   warranty claim because "[t]he fact that Plaintiffs did receive replacement printers and were able

24   to get assistance from Tech Support indicates that HP did comply with its warranty").

25         Similarly, here, plaintiff's breach of express warranty claims must be dismissed.  His sole

26   remedy for any alleged product failure is obtaining replacement Headphones under the Limited

27   Warranty.  He does not allege that Plantronics failed to replace his Headphones.  Nor does he

28   allege that Plantronics failed to honor the warranty for any other consumer who submitted a valid

1    claim.  He has accordingly failed to state a valid warranty claim.  *See Stearns v. Select Comfort*

2    *Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *5 (N.D. Cal. June 5, 2009) (dismissing

3    breach of express warranty claims because the defendant's warranty was the plaintiffs' exclusive

4    remedy); *Frenzel v. Aliphcom*, No. 14-CV-03587-WHO, 2015 WL 4110811, at *13 (N.D. Cal.

5    July 7, 2015) (finding that the only available remedy for alleged defects with Jawbone's fitness

6    tracker was Jawbone's limited warranty, and because the plaintiff "had not alleged that Jawbone

7    failed to repair or replace [the device,] . . . he could not maintain claims for . . . breach of express

8    warranty").

9         **B.     Plaintiff's Breach of Implied Warranty Claims (II, IV & V) Fail Because**

10             **Plantronics Validly Disclaimed any Implied Warranty.**

11        Plaintiff's breach of implied warranty claims fail because the Limited Warranty precludes

12   all implied warranties.  It is well established that "[a] company may disclaim the implied

13   warranty of merchantability so long as the disclaimer 'mentions[s] merchantability' and is

14   'conspicuous.'"  *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014) (quoting Cal.

15   Comm. Code § 2316(2)).  A company may also "disclaim the implied warranty of fitness as long

16   as the disclaimer is in writing and 'conspicuous.'"  *Id.* (quoting Cal. Comm. Code § 2316(2)).

17   And "where a remedy 'is expressly agreed to be exclusive, . . . it is the sole remedy.'"  *Frenzel v.*

18   *AliphCom*, 76 F. Supp. 3d 999, 1020 (N.D. Cal. 2014) (quoting Cal. Com. Code § 2719)).

19        Courts in this district have held that a disclaimer of all implied warranties is enforceable

20   and precludes any breach of implied warranty claims.  *See, e.g.*, *Davidson v. Apple, Inc.*, No. 16-

21   CV-04942-LHK, 2017 WL 976048, at *15 (N.D. Cal. Mar. 14, 2017) ("[T]he implied warranty

22   disclaimer contained within Defendant's Limited Warranty is enforceable, and the Court thus

23   GRANTS Defendant's motion to dismiss Plaintiffs' breach of implied warranty claim."); *In re*

24   *Google Phone Litig.*, No. 10-CV-01177-EJD, 2012 WL 3155571, at *7–8 (N.D. Cal. Aug. 2,

25   2012) (dismissing breach of implied warranty claim finding the defendant's disclaimer

26   conspicuous); *Inter-Mark USA, Inc. v. Intuit, Inc.*, No. C-07-04178 JCS, 2008 WL 552482, at *8

27   (N.D. Cal. Feb. 27, 2008) (holding that a disclaimer in all caps was conspicuous and thus

28   foreclosed the plaintiff's claim for breach of implied warranty of merchantability).

1   This Court similarly held in *Weeks* that the plaintiffs were not "entitled to any relief

2   outside the Limited Warranty" and consequently dismissed the breach of implied warranty

3   claims.  2018 WL 3933398, at *8–9.  The Court found the Limited Warranty superseded any

4   implied warranty and thus the plaintiff's "sole remedy . . . was to have their phones repaired,

5   replaced, or to be refunded." *Id.* at *9.  The same reasoning applies here.  Plantronics disclaimed

6   "all implied warranties or conditions, including any implied warranties of merchantability and

7   fitness for a particular purpose."  Eister Decl. Ex. 1 at 3.  This disclaimer was in writing and

8   conspicuous; it was in all capital letters and easily distinguishable from the surrounding text. *See*

9   *id.*

10   Because the disclaimer applies, the Court should dismiss all the implied warranty claims

11   as plaintiff does not allege that Plantronics refused to issue him a replacement. *See, e.g.*, *Frenzel*,

12   76 F. Supp. 3d at 1020 (dismissing breach of implied warranty claims because Jawbone's limited

13   warranty was the plaintiff's exclusive remedy and the plaintiff had "not alleged that Jawbone's

14   refusal to issue an additional replacement device occurred during the applicable warranty

15   period").  Indeed, plaintiff admits he requested replacements under the Limited Warranty and

16   Plantronics sent him replacement Headphones. *See* Compl. ¶¶ 33–34.  As such, plaintiff's claims

17   are precluded.

18   **C.      Even if the Court Were to Find the Limited Warranty is Not Applicable, the**

19   **Breach of Implied Warranty Claims Still Fail.**

20   Plaintiff's breach of implied warranty claims fail for two additional reasons.

21   First, plaintiff bought his Headphones from a retailer, Amazon.com, and thus lacks the

22   requisite vertical privity with Plantronics. *See id.* ¶ 27.  The Ninth Circuit explained in *Clemens*

23   *v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008), that, under California Commercial

24   Code section 2314, "a plaintiff asserting a breach of warranty claim[] must stand in vertical

25   privity with the defendant." *Id.* at 1023.  A consumer "who buys from a retailer is not in privity

26   with a manufacturer." *Id.*  And "[a] lack of vertical privity requires the dismissal of [a plaintiff's]

27   implied warranty claims." *Id.* at 1024.

28

Second, plaintiff's breach of implied warranty for a particular purpose claim fails because he does not allege facts showing he had any particular purpose in using the Headphones different from the ordinary purpose for which consumers use the Headphones.  Nor does he allege that Plantronics knew of any such purpose or that plaintiff was relying on Plantronics to furnish goods for his particular purpose.  "An implied warranty of fitness for a particular purpose arises only where (1) the purchaser at the time of contracting intends to use the goods for a particular purpose, (2) the seller at the time of contracting has reason to know of this particular purpose, (3) the buyer relies on the seller's skill or judgment to select or furnish goods suitable for the particular purpose, and (4) the seller at the time of contracting has reason to know that the buyer is relying on such skill and judgment." *Keith v. Buchanan,* 173 Cal. App. 3d 13, 25 (1985).  "A particular purpose differs from the ordinary purpose for which the goods are used in that it envisages *a specific use by the buyer* which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." *Am. Suzuki Motor Corp. v. Superior Court,* 37 Cal. App. 4th 1291, 1295 n.2 (1995) (emphases added) (internal quotation marks omitted).  Plaintiff alleges none of this.  To the contrary, he purchased the Headphones "to listen to music while exercising."  Compl. at ¶ 29.  Because plaintiff's intended use for the Headphones was not any different from the ordinary purposes for which the Headphones are used, his warranty claim fails.  *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *18 (N.D. Cal. Mar. 15, 2016) (dismissing implied warranty claim "because Plaintiff failed to identify any particular purpose for her use of Duralock Batteries, and failed to explain how that particular purpose differed from the ordinary purpose for Duralock Batteries").

**D.     The Breach of Warranty Claims (I–V) also Fail because Plaintiff Failed to Give Plantronics the Requisite Pre-Suit Notice.**

Plaintiff does not allege that he gave Plantronics written pre-suit notice of the alleged defect.  To the contrary, plaintiff maintains he was not required to give Plantronics notice.  *See* Compl.  ¶¶ 65, 83, 115.  But plaintiff is wrong.  In order "[t]o recover on a breach of warranty claim, [a plaintiff] must, within a reasonable time after he or she discovers . . . any breach, notify

1    the [defendant] of any breach or be barred from any remedy." *Adkins v. Apple Inc.*, 147 F. Supp.

2    3d 913, 920 (N.D. Cal. 2014) (quoting *Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169

3    Cal. App. 4th 116, 135 (2008)); *see also T & M Solar & Air Conditioning, Inc. v. Lennox Int'l*

4    *Inc.*, 83 F. Supp. 3d 855, 875 (N.D. Cal. 2015) ("[T]he Plaintiff must allege that he has given pre-

5    suit notice to the defendant of the alleged breach of warranty to allow the defendant

6    an opportunity to cure the defect outside of court.").

7          "Courts have interpreted [California Commercial Code section 2607] as requiring a

8    plaintiff asserting warranty claims to have provided the seller with pre-suit notice before

9    instituting a lawsuit." *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC,

10   2014 WL 1048710, at *4 (N.D. Cal. Mar. 14, 2014).  The purpose of requiring a plaintiff to give

11   pre-suit notice is to provide the defendant with an opportunity to negotiate a settlement and

12   preserve evidence before being sued.  *See Adkins*, 147 F. Supp. 3d at 920 ("This notice

13   requirement is designed to allow the seller the opportunity to repair the defective item, reduce

14   damages, avoid defective products in the future, and negotiate settlements." (internal quotation

15   marks and citation omitted)); *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011)

16   ("[P]re-suit notice requirement best satisfies the statutory objectives of § 2607(3)(A) by allowing

17   sellers to repair or remedy the problem by providing the opportunity to negotiate a settlement, and

18   by affording time to prepare for litigation by preserving relevant evidence." (internal quotation

19   marks and citation omitted)).

20         Here, plaintiff did not give Plantronics an opportunity because he never told Plantronics of

21   his intention to sue.  In circumstances such as this, courts have dismissed breach of warranty

22   claims.  *See id.* (finding the "district court properly dismissed" the breach of warranty claims

23   because the plaintiff failed to give the defendant pre-suit notice); *Adkins*, 147 F. Supp. 3d at 920–

24   21 (dismissing the plaintiffs' breach of warranty claim with prejudice "because the plaintiffs did

25   not provide Apple pre-suit notice of the alleged breach of warranty."); *Eckler v. Wal-Mart Stores,*

26   *Inc.,* No. 12-CV-727-LAB-MDD, 2012 WL 5382218, at *8 (S.D. Cal. Nov. 1, 2012) (dismissing

27   breach of warranty claim because the plaintiff failed to give pre-suit notice to the defendant).

28

1    Because plaintiff here concedes he did not give Plantronics notice before bringing this

2    lawsuit, the breach of warranty claims, both under California law and the federal Magnuson-Moss

3    Warranty Act, should be dismissed with prejudice.  *See Clemens*, 534 F.3d at 1022 ("[C]laims

4    under the Magnuson–Moss Act stand or fall with [the plaintiff's] express and implied warranty

5    claims under state law.  Therefore, this court's disposition of the state law warranty claims

6    determines the disposition of the Magnuson–Moss Act claims."); *Donohue*, 871 F. Supp. 2d at

7    930 ("Because the court dismisses plaintiff's state warranty claims, his MMWA claim is

8    dismissed as well.").

9    **III.    PLAINTIFF'S FRAUD-BASED CLAIMS (VI-VIII) MUST BE DISMISSED**

10   **BECAUSE PLAINTIFF FAILS TO ADEQUATELY ALLEGE PLANTRONICS'**

11   **KNOWLEDGE OF ANY DEFECT.**

12   The linchpin of plaintiffs' fraud-based claims is that Plantronics knew that the

13   Headphones had "one or more defects" that would cause them to fail prematurely.  Plaintiff

14   asserts that Plantronics thus had a duty to disclose the defect and that it falsely represented their

15   expected useful life.  These fraud-based allegations fail because plaintiff does not allege facts

16   showing either knowledge or the existence of any defect, let alone allege facts on these points that

17   satisfy the heightened standard of Federal Rule of Civil Procedure 9(b).[2]

18   To maintain his fraud-based claims, plaintiff must establish Plantronics knew the

19   statements were false at the time he purchased his Headphones.  *See, e.g.*, *Coleman-Anacleto v.*

20   *Samsung Electronics America, Inc.*, No. 16-CV-02941-LHK, 2016 WL 4729302, at *11 (N.D.

21   Cal., Sept. 12, 2016) (when a plaintiff alleges a manufacturer fraudulently failed to disclose a

22   fact, "the plaintiff must sufficiently allege that [the] defendant was aware of [the] defect at the

23   time of sale to survive a motion to dismiss" (quoting *Wilson v. Hewlett-Packard Co.*, 668 F.3d

_____

25   [2]    Because UCL, FAL, and CLRA claims alleging false advertising overlap in both scope
     and elements, courts often consolidate the analysis of motions to dismiss these claims.  *See, e.g.*,
26   *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1162-63 (N.D. Cal. 2011) ("[C]ourts
     often analyze the [UCL and CLRA] together . . . ."); *Chacanaca v. Quaker Oats Co.*, 752 F.
27   Supp. 2d 1111, 1124-27 (N.D. Cal. 2010) (analyzing UCL, FAL, and CLRA claims together);
     *Neu v. Terminix Int'l, Inc.*, No. 07-cv-6472, 2008 WL 2951390, at *3-4 (N.D. Cal. July 24, 2008)
28   (same).

1  1136, 1145 (9th Cir. 2012) (internal quotations omitted)); *Henryhand v. Dorel Juvenile Grp., Inc.*,

2  No. CV1700180SJOAGRX, 2017 WL 7806590, at *1 (C.D. Cal. Oct. 5, 2017) (holding that even

3  if the plaintiffs had pointed "to an actionable affirmative misrepresentation," they must

4  sufficiently allege that the defendant "*was aware of a defect at the time of sale*, which is required

5  for claims sounding in fraud to survive dismissal" (emphases added)).  Plantronics has "no duty

6  to disclose facts of which it was unaware."  *In re Sony Grand Wega KDF-E A10/A20 Series Rear*

7  *Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1095 (S.D. Cal. 2010).

8      But plaintiff does not and cannot sufficiently allege Plantronics was aware of any defects.

9  Plaintiff attempts to substantiate his claim by citing to 28 consumer reviews posted on

10  Plantronics' and Amazon.com's website.  *See* Compl. ¶¶ 24–26.  But he does not allege facts

11  showing that any of the cited reviews were made before plaintiff purchased his Headphones in

12  early 2015.  He cites 18 reviews from 2018, 2 from 2017, 5 from 2016, and 3 from 2015.  *See id.*

13  These reviews do nothing to support plaintiff's claim of Plantronics' pre-sale knowledge.  *See*

14  *Henryhand v. Dorel Juvenile Grp., Inc.*, No. CV1700180SJOAGRX, 2017 WL 7806590, at *6

15  (C.D. Cal. Oct. 5, 2017) (finding the consumer reviews the plaintiff relied on "occurred after [the

16  plaintiffs'] purchases" and "[t]hese allegations, without more, do not plausibly establish [the

17  defendant's] pre-sale knowledge of the alleged defect").

18      Moreover, even if any of the reviews had been posted before plaintiff purchased his

19  Headphones, anonymous postings on the internet are not a reliable source of information, and

20  plaintiff alleges no facts indicating that he has any basis for concluding that the postings are

21  legitimate or accurate.  *See Baba v. Hewlett-Packard Co.*, No. CV 09-05946 RS, 2011 WL

22  317650, at *3 (N.D. Cal. Jan. 28, 2011) ("Awareness of a few customer complaints . . . does not

23  establish knowledge of an alleged defect.").  And even accepting the truthfulness of the

24  unsubstantiated postings, they establish neither the existence of a defect nor Plantronics'

25  knowledge of any defect.  *See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 n.9

26  (N.D. Cal. 2008) ("Random anecdotal examples of disgruntled customers posting their views on

27  websites at an unknown time is not enough to impute knowledge upon defendants.").  In the

28  context of the more than a million Headphones sold during the relevant period, this small number

of unverified instances of alleged defects from unknown causes does not come close to showing either a defect or Plantronics' knowledge.  To the contrary, it only confirms the absence of any defect that could require disclosure.

In *Berenblat v. Apple, Inc.*, No. 08-4969 JF (PVT), 2010 WL 1460297 (N.D. Cal. Apr. 9, 2010), the plaintiffs relied on customer complaints as evidence that Apple knew of a defect.  *See id.* at *9.  The plaintiff alleged that there were over 350 complaints to Apple by the time plaintiff acquired his computer, far more than the number of complaints plaintiff has identified here.  *See id.* at *8.  But the court nonetheless dismissed the case on the ground that a customer complaint and knowledge of a defect were not the same: "[T]he complaints posted on Apple's consumer website [only] *establish the fact that some consumers were complaining.*  By themselves they are insufficient to show that Apple had knowledge that the memory slot *in fact was defective* and sought to conceal that knowledge from consumers."  *Id.* at *9 (emphases added).  The same is true here.  Plaintiff's allegation that there is some unknown number of consumer complaints does not show Plantronics knew of a defect.[3]

Plaintiff's other conclusory allegation, that Plantronics "continuously received broken headphones," is equally deficient.  Compl. ¶ 150.  Plaintiff alleges no facts regarding the number of Headphones Plantronics has received.  Nor does he allege when Plantronics received the alleged broken Headphones or the reason the Headphones broke.  All he offers is that Plantronics

---

[3]     *See also Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2015 WL 4967535, at *11 (N.D. Cal. Aug. 20, 2015) (finding the plaintiff failed to "allege that Defendants had knowledge of any product defect either at the time of sale, or when any allegedly false representations were made" when the plaintiff's "sole allegation regarding Defendant's knowledge of a defect" were "numerous complaints"); *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM PJWX, 2014 WL 5017843, at *10 (C.D. Cal. Oct. 3, 2014) (finding insufficient to establish knowledge an allegation that defendant received "numerous . . . complaints" from consumers about the alleged defect); *Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-CV-1142-SVW-PLA, 2013 WL 690822, at *6 (C.D. Cal. Feb. 19, 2013) (rejecting "knowledge" and "duty to disclose" allegations premised on claim that Honda knew of a defect based on "pre-release testing data, early consumer complaints to Honda and dealers, testing done in response to complaints, replacement part sales data, aggregate data from Honda dealers, and other internal sources."); *Rice v. Sunbeam*, No. CV 12-7923-CAS-(AJWx), 2013 WL 146270, at *7-8 (C.D. Cal. Jan. 7, 2013) (finding allegations that defendant had previously demanded consumers return their defective products, had received unspecified customer service/warranty service call center records for returns and/or complaints, and "numerous individual letters and communications sent by members of the Class" insufficient to allege knowledge under the CLRA).

has received some unknown number of Headphones that are "broken" for some unknown reason. This is insufficient.

In short, plaintiff has not satisfied the heightened pleading requirement under Federal Rule of Civil Procedure 9(b) to maintain his claims based in fraud.  Plaintiff has not alleged facts sufficient to show Plantronics knew of any alleged defect, nor stated with particularity the alleged defects in the Headphones. Accordingly, he fails to state a valid claim under the CLRA, UCL, and common law fraud.

## IV.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE A DEFECT.

The foregoing assumes that plaintiff adequately alleged that the Plantronics Headphones were defective.  In fact, however, none of the facts in the complaint show that the Headphones contain any defect that could give rise to a duty to disclose.  This is an additional reason to dismiss the complaint.

As explained above, plaintiff alleges no facts about the design of the product or its manufacturing process.  Nor does he allege a causal connection between the Headphones being exposed to sweat or water and a quantifiable effect on the battery.  Without this information (or other facts showing the existence of a defect), no basis exists for concluding that the Headphones have any defect that must be disclosed.  Especially for mass-produced products, such as headphones, some individual units of the product may fail for any number of causes other than a product defect.  The possibility of such events occurring is why product manufacturers provide warranties.  Under plaintiff's theory, however, all warranties are pointless (or at least easily evaded) because consumers could disregard the warranty and bring a fraud suit for a refund. Indeed, if plaintiff's theory were accepted, consumers could sue without their product ever having failed or even if the failure was caused by their own misuse.  All they would have to do is allege that there is a possibility of failure (and perhaps that the product purchased by other consumers

1  failed) and be entitled to damages on the theory that the price for all consumers would have been

2  lower.

3       Finding a duty to disclose based on the allegations here would open the door to a new

4  wave of lawsuits.  A plaintiff could allege with respect to almost any mass-produced product that

5  it may fail "after normal usage" (Compl. ¶ 4) or that one or more individual units of that product

6  in fact failed prematurely.  But no case of which defendant is aware has found that fact, by itself,

7  is enough to create a duty to disclose.  Reflecting that essentially all products will experience

8  some rate of premature failure (or failure from misuse), the cases that have found a duty to

9  disclose have involved an actual defect in the design of the product, not merely the potential

10  inherent in any product that particular units may wear out prematurely or otherwise not function

11  as intended.  *See Punian*, 2016 WL 1029607, at *14 ("[T]he Court is aware of no[] [cases] . . .

12  where a court has found that such an unspecified potential to fail suffices to allege a material

13  product defect.  Rather, as Defendants point out, cases finding that a company has a duty to

14  disclose a product defect have identified a particular design or manufacturing defect and

15  described the connection between the defect and the harm to the plaintiff.").  In *Elias v. Hewlett-*

16  *Packard Co.*, No. 12-CV-00421-LHK, 2014 WL 493034 (N.D. Cal. Feb. 5, 2014), for example,

17  the plaintiff alleged that Hewlett-Packard had installed a 220-watt power supply unit in one of its

18  computer models, when the component parts in that model needed at least 300 watts to operate

19  properly, *id.* at *1.  According to the plaintiff, because of this identified design defect, the power

20  supply unit was "incapable of providing adequate power."  *Id.* at *4.   In *Herremans*, the plaintiff

21  likewise alleged the existence of an actual, identified design defect—*i.e.*, the sealed ball bearing

22  system in the automobile's water pump was defective because the stress placed on it exceeded

23  engineering limitations.  2014 WL 5017843, at *1; *see also Wilson v. Hewlett-Packard Co.,* 668

24  F.3d 1136, 1143 (9th Cir. 2012) (noting that the "complaint describes the design defect in some

25  detail," including "that the component that connects the power jack to the motherboard 'was

26  designed in a manner that is exceedingly fragile,' as the connection is supported only by a few

27  pins affixed with solder"); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 917 (N.D. Cal. 2012)

28  (defendant admitted that the formula it used to calculate and display signal strength on cell

phones was "totally wrong"); *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 WL 3501715, at *4 (N.D. Cal. Aug. 10, 2011) (alleged defect in printer feed "was present 'out of the box' in every 8500 Printer 'and manifested on a regular basis when using the ADF regardless of conditions'").

Here, unlike these cases, plaintiff has not identified any defect, but only that some unidentified fraction of the more than one million Headphones sold allegedly failed to maintain an "adequate" charge for unknown reasons allegedly connected to being exposed to some unknown amount of "sweat and/or water." Compl. ¶¶ 5, 30. For all the complaint reveals, the alleged instances of battery issues could have been due entirely to consumer misuse, to mishandling during shipping, or any other numerous causes. None of that could possibly give rise to any duty to disclose. Without an actual, identified defect in the Headphones, plaintiff has no basis for any claim. *See Punian*, 2016 WL 1029607, at *15 (dismissing complaint with prejudice finding that the plaintiff had not alleged "the cause of any defect," the "impact" of the alleged the defect, the "likelihood" of the defect, or consumer expectations about the "potential to fail"). Plantronics is not aware of any case in which a court has ruled that alleging only a potential to fail, or some instances of failure, is enough to state a valid claim. *See id.* at *13 (because the plaintiff had not alleged the defect was the result "of any systematic design, technical, manufacturing, or other flaw present in all [the products]" his claims failed). Because that is all plaintiff has done here, his complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, plaintiff's complaint should be dismissed.

Dated: November 30, 2018.                    JONES DAY


                                             By: */s/ Darren K. Cottriel*
                                             _____
                                             Darren K. Cottriel

                                             Counsel for Defendant
                                             PLANTRONICS, INC.