1  Darren K. Cottriel (State Bar No. 184731)
   dcottriel@jonesday.com
2  JONES DAY
   3161 Michelson Drive, Suite 800
3  Irvine, CA 92612
   Telephone:   949.553.7548
4  Facsimile:   949.553.7539

5  Craig E. Stewart (State Bar No. 129530)
   cestewart@jonesday.com
6  JONES DAY
   555 California Street, 26th Floor
7  San Francisco, CA 94104
   Telephone:   415.626.3939
8  Facsimile:   415.875.5700

9  Dayme Sanchez (State Bar No. 323864)
   daymesanchez@jonesday.com
10 JONES DAY
   1755 Embarcadero Road
11 Palo Alto, CA 94303
   Telephone:   650.739.3939
12 Facsimile:   650.739.3900

13 Attorneys for Defendant
   PLANTRONICS, INC.
14

15                    UNITED STATES DISTRICT COURT

16                 NORTHERN DISTRICT OF CALIFORNIA

17                        SAN JOSE DIVISION

18

19 PHIL SHIN on behalf of himself and        **Case No. 5:18-cv-05626-NMC**
   all others similarly situated,
20                                            **DEFENDANT PLANTRONICS, INC.'S**
                Plaintiff,                    **MOTION TO DISMISS FIRST**
21                                            **AMENDED  COMPLAINT**
          v.
22                                            Date:        March 27, 2019
   PLANTRONICS, INC.,                         Time:        1:00 p.m.
23                                            Place:       Courtroom 7 – 4th Floor
                Defendant.
24

25

26

27

28

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ................................................................................ 1

RELIEF SOUGHT ................................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

INTRODUCTION .................................................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................... 2

BACKGROUND ................................................................................................................... 3

ARGUMENT ........................................................................................................................ 5

I.      LEGAL STANDARDS............................................................................................. 5

II.     PLAINTIFF CANNOT MAINTAIN HIS BREACH OF WARRANTY CLAIMS.......... 6

        A.      The Breach of Express Warranty Claims (I & III) Fail Because Plantronics
                Complied with the Warranty....................................................................... 6

        B.      Plaintiff's Breach of Implied Warranty Claims (II, IV & V) Fail Because
                Plantronics Validly Disclaimed any Implied Warranty. ........................... 9

        C.      Even if the Court Were to Find the Limited Warranty is Not Applicable,
                the Breach of Implied Warranty Claims Still Fail. ................................. 10

        D.      The Breach of Warranty Claims (I–V) also Fail because Plaintiff Failed to
                Give Plantronics the Requisite Pre-Suit Notice. .................................... 12

III.    PLAINTIFF'S FRAUD-BASED CLAIMS (VI-VIII) MUST BE DISMISSED
        BECAUSE PLAINTIFF FAILS TO ADEQUATELY ALLEGE PLANTRONICS'
        KNOWLEDGE OF ANY DEFECT. .......................................................... 13

IV.     THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE A
        DEFECT..................................................................................................... 19

CONCLUSION ........................................................................................................... 23

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

4

**CASES**

5

*Am. Suzuki Motor Corp. v. Superior Court,*
  37 Cal. App. 4th 1291 (1995)................................................................................11

6

7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..........................................................................................5

8

9

*Baba v. Hewlett-Packard Co.,*
  No. CV 09-05946 RS, 2011 WL 317650 (N.D. Cal. Jan. 28, 2011) ........................................15

10

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..........................................................................................5

11

12

*Berenblat v. Apple, Inc.,*
  No. 08-4969 JF (PVT), 2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) .....................................15

13

14

*Bros. v. Hewlett-Packard Co.,*
  No. C-06-02254RMW, 2007 WL 485979 (N.D. Cal. Feb. 12, 2007) ........................................8

15

16

*Clemens v. DaimlerChrysler Corp.,*
  534 F.3d 1017 (9th Cir. 2008)............................................................................10, 13

17

18

*Coleman-Anacleto v. Samsung Electronics America, Inc.,*
  No. 16-CV-02941-LHK, 2016 WL 4729302 (N.D. Cal., Sept. 12, 2016)...............................14

19

20

*Davidson v. Apple, Inc.,*
  No. 16-CV-04942-LHK, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017) .....................................9

21

*Donohue v. Apple, Inc.,*
  871 F. Supp. 2d 913 (N.D. Cal. 2012) ...............................................................13, 22

22

23

*Elias v. Hewlett-Packard Co.,*
  No. 12-CV-00421-LHK, 2014 WL 493034 (N.D. Cal. Feb. 5, 2014)................................6, 21

24

25

*Ferranti v. Hewlett-Packard Co.,*
  No. 5:13-CV-03847-EJD, 2014 WL 4647962 (N.D. Cal. Sept. 16, 2014)................................8

26

27

*Frenzel v. AliphCom,*
  76 F. Supp. 3d 999 (N.D. Cal. 2014) ...............................................................9, 10

28

*Frenzel v. Aliphcom*,
No. 14-CV-03587-WHO, 2015 WL 4110811 (N.D. Cal. July 7, 2015) ...................................9

*Grodzitsky v. Am. Honda Motor Co.*,
No. 2:12-CV-1142-SVW-PLA, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ........................16

*Henryhand v. Dorel Juvenile Grp., Inc.*,
No. CV1700180SJOAGRX, 2017 WL 7806590 (C.D. Cal. Oct. 5, 2017) ............................15

*Herremans v. BMW of N. Am., LLC*,
No. CV 14-02363 MMM ...........................................................................................16, 22

*In re Google Phone Litig.*,
No. 10-CV-01177-EJD, 2012 WL 3155571 (N.D. Cal. Aug. 2, 2012) ...............................7, 10

*In re Seagate Tech. LLC Litig.*,
233 F. Supp. 3d 776 (N.D. Cal. 2017) ....................................................................................8

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television
Litig.*,
758 F. Supp. 2d 1077 (S.D. Cal. 2010) .................................................................................14

*Inter-Mark USA, Inc. v. Intuit, Inc.*,
No. C-07-04178 JCS, 2008 WL 552482 (N.D. Cal. Feb. 27, 2008).......................................10

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)................................................................................................6

*Keith v. Buchanan*,
173 Cal. App. 3d 13 (1985)...................................................................................................11

*Kowalsky v. Hewlett-Packard Co.*,
No. 10-CV-02176-LHK, 2011 WL 3501715 (N.D. Cal. Aug. 10, 2011).........................13, 22

*Minkler v. Apple, Inc.*,
65 F. Supp. 3d 810 (N.D. Cal. 2014) ......................................................................................9

*Nygren v. Hewlett-Packard Co.*,
No. 07-cv-05793 JW, 2008 WL 11399759 (N.D. Cal. Oct. 24, 2008) ..................................7, 8

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008) ..................................................................................15

*Rice v. Sunbeam*,
No. CV 12-7923-CAS-(AJWx), 2013 WL 146270 (C.D. Cal. Jan. 7, 2013) .........................16

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

*Stearns v. Select Comfort Retail Corp.*,
    No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ...................................9

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003).........................................................................................5

*Weeks v. Google LLC*,
    No. 18-CV-00801 NC, 2018 WL 3933398 (N.D. Cal. Aug. 16, 2018) ......................8

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012).............................................................................14, 22

**STATUTES**

California Commercial Code § 2314 .....................................................................................11

California Song-Beverly Act.....................................................................................................5

Consumer Legal Remedies Act....................................................................................5, 6, 13, 19

Magnuson-Moss Warranty Act .........................................................................................5, 13

California Business & Professions Code §17200 *et seq.* ...................................5, 6, 13, 19

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 9(b) .......................................................................6, 13, 19

Federal Rule of Civil Procedure 12(b)(6) ....................................................................1, 7

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on March 27, 2019, at 1:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 7 of this Court, located at 280 South 1st Street, San Jose, CA 95113, before the Honorable Nathanael M. Cousins, defendant Plantronics, Inc. will and hereby does move under Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff's First Amended Complaint ("FAC"), ECF No. 1.

**RELIEF SOUGHT**

Dismissal of all claims in defendant's favor.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiff alleges that Plantronics BackBeat FIT wireless headphones ("Headphones") contain "one or more defects" that cause their battery to fail prematurely. Based on these purported defects, plaintiff asserts claims for breach of warranty, failure to disclose, and false advertising. But the only facts he alleges in support of these claims are that his own headphones failed to hold a charge and that some anonymous consumers reported online that their Headphones also failed. That is not enough to support a claim. It does not show that the Headphones contain a product defect, as opposed to some individual units failing. Nor is it sufficient to support plaintiff's conclusory allegation that Plantronics knew of any alleged defect.

The FAC should accordingly be dismissed. The courts have repeatedly dismissed complaints just like this one that seek to predicate warranty and false advertising claims on the failure of the plaintiff's own product and those of anonymous internet reviewers. The result should be the same here. Plantronics sold over 1 million Headphones. The alleged premature failure of a small fraction of these devices—and plaintiff's allegations show nothing more than that—does not establish any product defect that could support a lawsuit like this. If it did, virtually every manufacturer of a consumer product could be sued for false advertising—except perhaps manufacturers whose manufacturing and distribution process has achieved such a state of perfection that no units of their product line ever fail prematurely. At best, plaintiff has shown only that he or other consumers may be entitled to seek repair or replacement under Plantronics'

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

1   limited warranty, not that Plantronics breached that warranty, let alone that it engaged in

2   consumer fraud or false advertising.

3          Plaintiff's consumer fraud claims also fail because the bare existence of some consumer

4   complaints does not show that the manufacturer knew that the product was allegedly defective.

5   To the contrary, courts in this district have found that consumer complaints are insufficient to

6   establish the requisite knowledge to trigger a duty to disclose.  And the alleged consumer

7   complaints here are particularly insufficient because the vast majority were posted after plaintiff

8   purchased his headphones and therefore prove nothing about Plantronics' purported knowledge at

9   the time plaintiff purchased his Headphones.

10          Plaintiff's breach of warranty claims fail as well.  The sole warranty covering the

11   Headphones is Plantronics' express Limited Warranty—which disclaims all other warranties and

12   provides that Plantronics will repair or replace any defective product.  Plaintiff concedes

13   Plantronics honored the warranty by sending plaintiff replacement headphones.  And he makes no

14   claim that Plantronics failed to honor the warranty for any other consumer who submitted a valid

15   claim.  That defeats his breach of warranty claims.  Plaintiff alleges the replacements he received

16   were defective.  But this Court and others have rejected that as a valid basis for asserting a breach

17   of warranty claim.  The relevant question is whether the manufacturer responded appropriately

18   under the express warranty—and the facts alleged here show that Plantronics did.

19          In short, the FAC is devoid of non-conclusory factual allegations sufficient to support a

20   claim.  The Court should dismiss the FAC in its entirety.

## STATEMENT OF ISSUES TO BE DECIDED

21

22          1.      Has plaintiff stated a valid claim for breach of express and implied warranty when

23   Plantronics fulfilled its obligations under the applicable Limited Warranty?

24          2.      Has plaintiff alleged a valid claim for breach of implied warranty even though he

25   lacks the requisite vertical privity with Plantronics?

26          3.      Has plaintiff stated a valid claim for breach of the implied warranty of fitness for a

27   particular purpose, when he does not allege any facts showing that he had a particular purpose for

28   Plantronics' Headphones different from their ordinary purpose?

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

4.      Has plaintiff stated a valid claim for breach of express and implied warranty when he failed to give Plantronics pre-suit notice of the alleged defect?

5.      Has plaintiff alleged sufficient facts to show, for purposes of plaintiff's fraud-based claims, a defect in the Headphones and that Plantronics knew of the alleged defect and false statements?

## BACKGROUND

Plaintiff sues on behalf of an alleged nationwide class of consumers who purchased Plantronics' BackBeat FIT wireless headphones.  FAC ¶ 50.  For the Court's reference, a photo of the headphones is provided below:



According to plaintiff, Plantronics markets the Headphones as being sweatproof and waterproof, and having a battery life that lasts "up to 8 hours," all the while allegedly knowing that these statements are false and misleading.  *Id.* ¶¶ 1–9, 14–34.  Plaintiff asserts the Headphones "contain one or more defects that cause the battery life to diminish and eventually stop retaining a charge after normal usage, especially when the Headphones are exposed to sweat or water."  *Id.* ¶ 4.  Plaintiff alleges that Plantronics knew of this alleged defect and fraudulently omitted and misrepresented these qualities to consumers.  *Id.* ¶¶ 5–7.

Plaintiff asserts that he purchased his Headphones in March 2015 from Amazon.com.  *Id.* ¶ 36.  He says that, before purchasing them, he reviewed "marketing information" on Amazon's website that described the Headphones "as waterproof and sweatproof, and as providing up to

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

eight hours of listening time on a single charge." *Id.* ¶ 37.  According to plaintiff, however, his Headphones "experience rapidly diminishing battery life" "in part due to the Heaphones' failure to resist sweat and water." *Id.* ¶ 7.  Plaintiff alleges he used the Headphones "during runs" and "exposed" them to "sweat *and/or* water." *Id.* ¶ 39 (emphasis added).  Ten months later, in mid-January 2016, he says he noticed the "Headphones were becoming difficult to charge" and one week later they "failed to power." *Id.* ¶ 40.

Nowhere does plaintiff allege any facts regarding which part or component of the Headphones is defective or the nature of the defect.  He does not, for example, state whether the defect is in the battery itself or in some other part of the Headphones that affects the battery.  Instead, he alleges only that either "flimsy plastic" or "the inadequate acquisition, installation, construction and manufacture of the rechargeable batteries" causes the alleged battery failure, "especially when the Headphones are exposed to sweat or water." *Id.* ¶¶ 29, 4.  Nor does plaintiff allege how much sweat or water he exposed the Headphones to.  In fact, he appears to be unable to decide whether he exposed them to sweat, water, or both.  *Id.* ¶¶ 4, 39.  Instead, plaintiff asks the Court to trust his personal judgment that, because of alleged exposure to some unidentified quantity of sweat *or* water, the batteries systematically fail in all of the over one million Headphones Plantronics has sold.

Plaintiff also does not allege that he tested the Headphones' resistance to moisture or offer any other facts to show that the Headphones' battery is diminished as a result of exposure to moisture.  Plaintiff does not even allege how long the batteries last.  He claims the Headphones "regularly fail to retain a charge" and "diminish over time," but does not allege after how much time of use the battery diminishes or for how many hours the battery retained a charge before failing to "hold a charge." *Id.* ¶¶ 4, 6.  Based on plaintiff's experience and that of a handful of anonymous consumers who posted online reviews, he alleges that "***none*** of the Headphones" sold by Plantronics "have a battery that can be consistently used for eight hours without further charging." *Id.* ¶ 18 (emphasis added).

Plaintiff further alleges that, under "Plantronics' one-year warranty," he and other consumers have returned defective Headphones but the replacements have contained the "exact

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

1   same defects." *Id.* ¶¶ 7, 41.  But plaintiff does not allege when his replacement Headphones

2   stopped working and why.  *Id.* ¶ 41.  Nor does he allege why the replacement Headphones of

3   unidentified consumers stopped working.  *Id.* ¶ 7.

4       Plaintiff's sole claim of injury is that, if he had been informed of the alleged unidentified

5   defects, he "would have paid less" to purchase the Headphones.  *Id.* ¶ 8.  He does not identify

6   how much he was willing to pay for the Headphones versus the amount he paid.  *See id.*

7       Based on these vague and conclusory allegations, plaintiff asserts claims for violation of

8   express and implied warranties under the Magnuson-Moss Warranty Act and California Song-

9   Beverly Act, as well as claims under the California Consumer Legal Remedies Act ("CLRA"),

10  California's Unfair Competition Law (Bus. & Prof. Code § 17200 *et seq.*) ("UCL"), and common

11  law fraud.

12                               **ARGUMENT**

13  **I.    LEGAL STANDARDS.**

14      To survive a motion to dismiss, a complaint must plead sufficient factual matter, if

15  accepted as true, to state a claim for relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 556

16  U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiff must plead

17  "factual content that allows the court to draw the reasonable inference that the defendant is liable

18  for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  While allegations of material fact are

19  assumed to be true and viewed in the light most favorable to the plaintiff, the Court need not

20  accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact,

21  or unreasonable inferences.  *Id.* at 678–79.  Courts are "not bound to accept as true a legal

22  conclusion couched as a factual allegation."  *Id.* at 678 (internal citation omitted).

23      When alleging a claim sounding in fraud, a plaintiff must plead the fraud with

24  particularity.  *See* FED. R. CIV. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

25  1103 (9th Cir. 2003).  "Averments of fraud must be accompanied by the who, what, when, where,

26  and how of the misconduct charged."  *Vess*, 317 F.3d at 1106 (internal quotation marks omitted).

27  A "plaintiff must set forth what is false or misleading about a statement, and why it is false."  *Id.*

28  (internal quotation marks omitted).  This is true as well for claims under the UCL or CLRA that

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

1   are "'grounded in fraud' or . . . 'sound in fraud.'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

2   1125 (9th Cir. 2009) (*quoting Vess*, 317 F.3d at 1103–04)); *see also Elias v. Hewlett-Packard Co.*

3   903 F. Supp. 2d 843, 853 (N.D. Cal. 2012) ("Claims sounding in fraud . . . are subject to the

4   heightened pleading requirements of Federal Rule of Civil Procedure 9(b)"); *Rasmussen v. Apple*

5   *Inc.*, 27 F. Supp. 3d 1027, 1043 (N.D. Cal. 2014) (analyzing UCL and CLRA claims under Rule

6   9(b)); *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1025 (N.D. Cal. 2012) ("Rule 9(b)'s

7   heightened pleading standards apply to all UCL . . . or CLRA claims that are grounded in

8   fraud.").

9   **II.      PLAINTIFF CANNOT MAINTAIN HIS BREACH OF WARRANTY CLAIMS.**

10            **A.      The Breach of Express Warranty Claims (I & III) Fail Because Plantronics**

11                    **Complied with the Limited Warranty.**

12            Plaintiff's breach of express and implied warranty claims (I–V) must be dismissed

13   because Plantronics' Limited Warranty is his "exclusive remedy" for the alleged defective

14   Headphones.  The Limited Warranty provides in relevant part:

15            During the Warranty Period Plantronics will repair or replace, at its option,
              products that manifest defects in materials or workmanship if you provide notice
16            to Plantronics and return the product to Plantronics in the manner described
              below.
17

18                    *          *          *          *          *

19            In the unlikely event that your product has recurring failures or Plantronics is
              unable to repair or replace the product, Plantronics will provide you with a
20            replacement product selected by Plantronics that is the same or equivalent to your
              product in performance. **This is your exclusive remedy for a defective product**.
21

22            PLANTRONICS MAKES NO OTHER EXPRESS WARRANTY WHETHER
              WRITTEN OR ORAL AND PLANTRONICS **EXPRESSLY DISCLAIMS**
23            **ALL WARRANTIES AND CONDITIONS NOT STATED IN THIS**
              **LIMITED WARRANTY**. . . .  **PLANTRONICS DISCLAIMS ALL**
24            **IMPLIED WARRANTIES OR CONDITIONS**, INCLUDING ANY IMPLIED
              WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A
25            PARTICULAR PURPOSE.

26   Eister Decl. Ex. 1 [ECF No. 30-2] at 2–3 (emphases added).[1]

27   _____

28   [1]      Plantronics requests that the Court take judicial notice of the Limited Warranty.  "[A]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff acknowledges Plantronics' warranty applies, but alleges that, because he was given defective replacements, he can assert claims for breach of implied and express warranties. FAC ¶¶ 7, 41, 61–134.  But plaintiff cannot bypass the Limited Warranty simply because the replacements he received allegedly had an unidentified defect or did not function properly. Instead, under the Limited Warranty, plaintiff may only receive another replacement product

---

court may take judicial notice of a material that is submitted as part of the complaint, or is necessarily relied upon by the complaint, as well as matters of public record." *Lee v. Thornburg Mortg. Home Loans Inc.*, No. 14-CV-00602 NC, 2014 WL 4953966, at *4 (N.D. Cal. Sept. 29, 2014).  Plaintiff's allegations explicitly refer to the warranty.  FAC ¶¶ 7, 41.  As explained in the declarations of Sharon Easterly ("Easterly Decl.") and Robert Eister ("Eister Decl."), the Limited Warranty was the applicable warranty when plaintiff purchased his Headphones and during the alleged class period.  *See* ECF Nos. 30-1, 30-3.

Because plaintiff refers to the Limited Warranty in the FAC, the Court may treat the warranty as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Courts in this district have taken judicial notice of warranties referred to in a plaintiff's complaint.  *See, e.g., Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1176 n.5 (N.D. Cal. 2017) ("Because plaintiffs' allegations explicitly refer to and rely on Nissan's express warranty and its terms, . . . I GRANT Nissan's request for judicial notice."); *Cover v. Windsor Surry Co.*, No. 14-CV-05262-WHO, 2016 WL 520991, at *2 (N.D. Cal. Feb. 10, 2016) (granting the defendant's request for judicial notice of a warranty because the plaintiff did not dispute the accuracy of the warranty and quoted directly from it in his complaint); *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1103 (N.D. Cal. 2007) (granting Sony's request for judicial notice, at the motion to dismiss stage, of the express warranty provided for in its VAIO notebooks); *Nygren v. Hewlett-Packard Co.*, No. C 07-05793 JW, 2008 WL 11399759, at *6, n.2 (N.D. Cal. Oct. 24, 2008) ("Although Plaintiffs did not attach the Limited Warranty to the Amended Complaint, it is referenced in the pleadings and thus, the Court considers it in its analysis"); *In re Google Phone Litig.*, No. 10-CV-01177-EJD, 2012 WL 3155571, at *7 (N.D. Cal. Aug. 2, 2012) (considering Google's terms of sale in ruling on a motion to dismiss the plaintiff's breach of warranty claims because the terms were referenced in the complaint and there was "no dispute as to [their] authenticity").  The Court should take judicial notice of the Limited Warranty because the warranty is relevant and plaintiff acknowledges and refers to it in his complaint.  Moreover, the viability of plaintiff's breach of express and implied warranty claims are dependent on the limitations and disclaimers in the Limited Warranty.

The Limited Warranty may be considered on this motion to dismiss under the incorporation-by-reference doctrine.  Under the doctrine, courts may treat certain documents as though they are part of the complaint once the defendant "attaches the document to its motion to dismiss."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  The doctrine prevents plaintiffs from selecting only portions of a document to support their claims, while omitting parts that weaken their claims.  The doctrine may be applied "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint."  *Id.*  The doctrine is applicable here.  Plaintiff refers to the Limited Warranty but omits attaching it to the FAC. Accordingly, the Court may consider it.

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

1   "that is the same or equivalent" to the Headphones in performance as provided for in the

2   warranty.  Eister Decl. Ex. 1 at 3.  Moreover, the Limited Warranty applies equally to a

3   replacement product for a period of twelve months following the replacement.  *See id.*

4          Consistent with this explicit language, courts in this district have held that an express

5   warranty is not breached merely because a manufacturer provides a defective replacement.  *See,*

6   *e.g.*, *Nygren*, 2008 WL 11399759, at *5 ("Courts have held that a manufacturer does not breach

7   an express warranty if it offers to provide the remedies specified in the warranty.").  This Court

8   recently followed this authority in *Weeks v. Google LLC*, No. 18-CV-00801 NC, 2018 WL

9   3933398 (N.D. Cal. Aug. 16, 2018).  The plaintiffs there sued for breach of express warranty.  *Id.*

10  at *1–2.  They alleged that Google sold them smartphones with defective microphones and that,

11  when they submitted a claim to Google under the one-year limited warranty, Google gave them

12  equally defective replacements.  *Id.*  As plaintiff does here, they argued that the defective

13  replacements gave them a viable claim.  *Id.* at *4–8.  This Court disagreed, ruling that merely

14  providing a defective replacement is not a breach of warranty.  *Id.* at *5.  The Court reasoned that

15  the language of the warranty governs and no breach occurs when the warranty provides only that

16  a replacement will be given, with no promise that the replacement might not itself require repair

17  or replacement.  *Id.* at *7 ("The question of whether it was valid under the express warranty to

18  replace a defective [smartphone] with another defective [smartphone] must be answered in the

19  affirmative based on a plain reading of the Limited Warranty.").

20         Other courts have similarly found that when a defendant provides a replacement under a

21  warranty, even if it is defective, a plaintiff cannot maintain a viable claim for breach of express

22  warranty.  *See, e.g.*, *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 782 (N.D. Cal. 2017)

23  ("[T]he Court holds that failure of a replacement drive—which Plaintiffs characterize as

24  'replac[ing] defective Drives with defective Drives,' . . . is not in itself a breach of the express

25  terms of [the defendant's] warranty."); *Bros. v. Hewlett-Packard Co.*, No. C-06-02254RMW,

26  2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007) (finding that, even if a defective part was

27  replaced with another defective part, providing a replacement "is exactly what the [defendant's]

28  Limited Warranty provides" and thus the defendant "could not have breached the Limited

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

1    Warranty by acting in conformance with it."); *Ferranti v. Hewlett-Packard Co.*, No. 5:13-CV-

2    03847-EJD, 2014 WL 4647962, at *6 (N.D. Cal. Sept. 16, 2014) (dismissing breach of express

3    warranty claim because "[t]he fact that Plaintiffs did receive replacement printers and were able

4    to get assistance from Tech Support indicates that HP did comply with its warranty").

5          Similarly, here, plaintiff's breach of express warranty claims must be dismissed.  His sole

6    remedy for any alleged product failure is obtaining replacement Headphones under the Limited

7    Warranty.  He does not allege that Plantronics failed to replace his Headphones.  Nor does he

8    allege that Plantronics failed to honor the warranty for any other consumer who submitted a valid

9    claim.  He has accordingly failed to state a valid warranty claim.  *See Stearns v. Select Comfort*

10   *Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *5 (N.D. Cal. June 5, 2009) (dismissing

11   breach of express warranty claims because the defendant's warranty was the plaintiffs' exclusive

12   remedy); *Frenzel v. Aliphcom*, No. 14-CV-03587-WHO, 2015 WL 4110811, at *13 (N.D. Cal.

13   July 7, 2015) (finding that the only available remedy for alleged defects with Jawbone's fitness

14   tracker was Jawbone's limited warranty, and because the plaintiff "had not alleged that Jawbone

15   failed to repair or replace [the device,] . . . he could not maintain claims for . . . breach of express

16   warranty").

17         **B.      Plaintiff's Breach of Implied Warranty Claims (II, IV & V) Fail Because**

18                 **Plantronics Validly Disclaimed any Implied Warranty.**

19         Plaintiff's breach of implied warranty claims fail because the Limited Warranty precludes

20   all implied warranties.  It is well established that "[a] company may disclaim the implied

21   warranty of merchantability so long as the disclaimer 'mentions[s] merchantability' and is

22   'conspicuous.'"  *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014) (quoting Cal.

23   Comm. Code § 2316(2)).  A company may also "disclaim the implied warranty of fitness as long

24   as the disclaimer is in writing and 'conspicuous.'"  *Id.* (quoting Cal. Comm. Code § 2316(2)).

25   And "where a remedy 'is expressly agreed to be exclusive, . . . it is the sole remedy.'"  *Frenzel v.*

26   *AliphCom*, 76 F. Supp. 3d 999, 1020 (N.D. Cal. 2014) (quoting Cal. Com. Code § 2719)).

27         Courts in this district have held that a disclaimer of all implied warranties is enforceable

28   and precludes any breach of implied warranty claims.  *See, e.g.*, *Davidson v. Apple, Inc.*, No. 16-

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

1   CV-04942-LHK, 2017 WL 976048, at *15 (N.D. Cal. Mar. 14, 2017) ("[T]he implied warranty

2   disclaimer contained within Defendant's Limited Warranty is enforceable, and the Court thus

3   GRANTS Defendant's motion to dismiss Plaintiffs' breach of implied warranty claim."); *In re*

4   *Google Phone Litig.*, No. 10-CV-01177-EJD, 2012 WL 3155571, at *7–8 (N.D. Cal. Aug. 2,

5   2012) (dismissing breach of implied warranty claim finding the defendant's disclaimer

6   conspicuous); *Inter-Mark USA, Inc. v. Intuit, Inc.*, No. C-07-04178 JCS, 2008 WL 552482, at *8

7   (N.D. Cal. Feb. 27, 2008) (holding that a disclaimer in all caps was conspicuous and thus

8   foreclosed the plaintiff's claim for breach of implied warranty of merchantability).

9          This Court similarly held in *Weeks* that the plaintiffs were not "entitled to any relief

10   outside the Limited Warranty" and consequently dismissed the breach of implied warranty

11   claims.  2018 WL 3933398, at *8–9.  The Court found the Limited Warranty superseded any

12   implied warranty and thus the plaintiff's "sole remedy . . . was to have their phones repaired,

13   replaced, or to be refunded."  *Id.* at *9.  The same reasoning applies here.  Plantronics disclaimed

14   "all implied warranties or conditions, including any implied warranties of merchantability and

15   fitness for a particular purpose."  Eister Decl. Ex. 1 at 3.  This disclaimer was in writing and

16   conspicuous; it was in all capital letters and easily distinguishable from the surrounding text.  *Id.*

17          Because the disclaimer applies, the Court should dismiss all the implied warranty claims

18   as plaintiff does not allege that Plantronics refused to issue him a replacement.  *See, e.g.*, *Frenzel*,

19   76 F. Supp. 3d at 1020 (dismissing breach of implied warranty claims because Jawbone's limited

20   warranty was the plaintiff's exclusive remedy and the plaintiff had "not alleged that Jawbone's

21   refusal to issue an additional replacement device occurred during the applicable warranty

22   period").  Indeed, plaintiff admits he requested replacements under the Limited Warranty and

23   Plantronics sent him replacement Headphones.  *See* FAC ¶¶ 41–42.  Plaintiff's claims are

24   accordingly precluded.

25          **C.     Even if the Court Were to Find the Limited Warranty is Not Applicable, the**

26                  **Breach of Implied Warranty Claims Still Fail.**

27          Plaintiff's breach of implied warranty claims fail for two additional reasons.

28          First, plaintiff bought his Headphones from a retailer, Amazon.com, and thus lacks the

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

1  requisite vertical privity with Plantronics.  *See id.* ¶ 36.  The Ninth Circuit explained in *Clemens*

2  *v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008), that, under California Commercial

3  Code section 2314, "a plaintiff asserting a breach of warranty claim[] must stand in vertical

4  privity with the defendant."  *Id.* at 1023.  A consumer "who buys from a retailer is not in privity

5  with a manufacturer."  *Id.*  And "[a] lack of vertical privity requires the dismissal of [a plaintiff's]

6  implied warranty claims."  *Id.* at 1024.

7      Second, plaintiff's breach of implied warranty for a particular purpose claim fails because

8  he does not allege facts showing he had any particular purpose in using the Headphones different

9  from the ordinary purpose for which consumers use the Headphones.  Nor does he allege that

10  Plantronics knew of any such purpose or that plaintiff was relying on Plantronics to furnish goods

11  for his particular purpose.  "An implied warranty of fitness for a particular purpose arises only

12  where (1) the purchaser at the time of contracting intends to use the goods for a particular

13  purpose, (2) the seller at the time of contracting has reason to know of this particular purpose, (3)

14  the buyer relies on the seller's skill or judgment to select or furnish goods suitable for the

15  particular purpose, and (4) the seller at the time of contracting has reason to know that the buyer

16  is relying on such skill and judgment."  *Keith v. Buchanan,* 173 Cal. App. 3d 13, 25 (1985).  "A

17  particular purpose differs from the ordinary purpose for which the goods are used in that it

18  envisages *a specific use by the buyer* which is peculiar to the nature of his business whereas the

19  ordinary purposes for which goods are used are those envisaged in the concept of merchantability

20  and go to uses which are customarily made of the goods in question."  *Am. Suzuki Motor Corp. v.*

21  *Superior Court,* 37 Cal. App. 4th 1291, 1295 n.2 (1995) (emphases added) (internal quotation

22  marks omitted).  Plaintiff alleges none of this.  To the contrary, he says only that he purchased the

23  Headphones "to listen to music while exercising."  FAC ¶ 38.  Because plaintiff's intended use

24  was not any different from the ordinary purposes for which the Headphones are used, his

25  warranty claim fails.  *See Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at

26  *18 (N.D. Cal. Mar. 15, 2016) (dismissing implied warranty claim "because Plaintiff failed to

27  identify any particular purpose for her use of Duralock Batteries, and failed to explain how that

28  particular purpose differed from the ordinary purpose for Duralock Batteries").

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

1    **D.      The Breach of Warranty Claims (I–V) also Fail because Plaintiff Failed to**
2            **Give Plantronics the Requisite Pre-Suit Notice.**

3            Plaintiff does not allege that he gave Plantronics written pre-suit notice of the alleged

4    defect.  To the contrary, plaintiff maintains he was not required to give Plantronics notice.  FAC

5    ¶¶ 73, 91, 123.  Plaintiff is wrong.  "To recover on a breach of warranty claim, [a plaintiff] must,

6    within a reasonable time after he or she discovers . . . any breach, notify the [defendant] of any

7    breach or be barred from any remedy."  *Adkins v. Apple Inc.*, 147 F. Supp. 3d 913, 920 (N.D. Cal.

8    2014) (quoting *Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169 Cal. App. 4th 116, 135

9    (2008)); *see also T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855,

10   875 (N.D. Cal. 2015) ("[T]he Plaintiff must allege that he has given pre-suit notice to the

11   defendant of the alleged breach of warranty to allow the defendant an opportunity to cure

12   the defect outside of court.").

13           "Courts have interpreted [California Commercial Code section 2607] as requiring a

14   plaintiff asserting warranty claims to have provided the seller with pre-suit notice before

15   instituting a lawsuit."  *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC,

16   2014 WL 1048710, at *4 (N.D. Cal. Mar. 14, 2014).  The purpose of requiring a plaintiff to give

17   pre-suit notice is to give the defendant an opportunity to negotiate a settlement and preserve

18   evidence before being sued.  *See Adkins*, 147 F. Supp. 3d at 920 ("This notice requirement is

19   designed to allow the seller the opportunity to repair the defective item, reduce damages, avoid

20   defective products in the future, and negotiate settlements." (internal quotation marks and citation

21   omitted)); *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) ("[P]re-suit notice

22   requirement best satisfies the statutory objectives of § 2607(3)(A) by allowing sellers to repair or

23   remedy the problem by providing the opportunity to negotiate a settlement, and by affording time

24   to prepare for litigation by preserving relevant evidence." (internal quotation marks and citation

25   omitted)).

26           Here, plaintiff did not give Plantronics any such opportunity because he never told

27   Plantronics of his intention to sue.  In circumstances such as this, courts have dismissed breach of

28   warranty claims.  *See id.* (finding the "district court properly dismissed" the breach of warranty

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

1  claims because the plaintiff failed to give the defendant pre-suit notice); *Adkins*, 147 F. Supp. 3d

2  at 920–21 (dismissing the plaintiffs' breach of warranty claim with prejudice "because the

3  plaintiffs did not provide Apple pre-suit notice of the alleged breach of warranty."); *Eckler v.*

4  *Wal-Mart Stores, Inc.,* No. 12-CV-727-LAB-MDD, 2012 WL 5382218, at *8 (S.D. Cal. Nov. 1,

5  2012) (dismissing breach of warranty claim because the plaintiff failed to give pre-suit notice to

6  the defendant).

7       Because plaintiff concedes he did not give Plantronics notice before bringing this lawsuit,

8  the breach of warranty claims, both under California law and the federal Magnuson-Moss

9  Warranty Act, should be dismissed with prejudice.  *See Clemens*, 534 F.3d at 1022 ("[C]laims

10  under the Magnuson–Moss Act stand or fall with [the plaintiff's] express and implied warranty

11  claims under state law.  Therefore, this court's disposition of the state law warranty claims

12  determines the disposition of the Magnuson–Moss Act claims."); *Donohue*, 871 F. Supp. 2d at

13  930 ("Because the court dismisses plaintiff's state warranty claims, his MMWA claim is

14  dismissed as well.").

15  **III.    PLAINTIFF'S FRAUD-BASED CLAIMS (VI-VIII) MUST BE DISMISSED**

16  **BECAUSE PLAINTIFF FAILS TO ADEQUATELY ALLEGE PLANTRONICS'**

17  **KNOWLEDGE OF ANY DEFECT.**

18       The linchpin of plaintiffs' fraud-based claims is that Plantronics knew that the

19  Headphones had "one or more defects" that would cause them to fail prematurely.  FAC ¶¶ 4–5.

20  Plaintiff asserts that Plantronics thus had a duty to disclose the defect and that it falsely

21  represented the Headphones' expected useful life.  These fraud-based allegations fail because

22  plaintiff does not allege facts showing either knowledge or the existence of any defect, let alone

23  allege facts on these points that satisfy the heightened standard of Federal Rule of Civil Procedure

24  9(b).[2]

25  _____

26  [2]     Because the UCL, FAL, and CLRA claims alleging false advertising overlap in both scope
    and elements, courts often consolidate the analysis of motions to dismiss these claims.  *See, e.g.*,
27  *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1162-63 (N.D. Cal. 2011) ("[C]ourts
    often analyze the [UCL and CLRA] together . . . ."); *Chacanaca v. Quaker Oats Co.*, 752 F.
28  Supp. 2d 1111, 1124-27 (N.D. Cal. 2010) (analyzing UCL, FAL, and CLRA claims together);

1      To maintain his fraud-based claims, plaintiff must establish Plantronics knew the

2  statements were false at the time he purchased his Headphones.  *See, e.g.*, *Coleman-Anacleto v.*

3  *Samsung Electronics America, Inc.*, No. 16-CV-02941-LHK, 2016 WL 4729302, at *11 (N.D.

4  Cal., Sept. 12, 2016) (when a plaintiff alleges a manufacturer fraudulently failed to disclose a

5  fact, "the plaintiff must sufficiently allege that [the] defendant was aware of [the] defect at the

6  time of sale to survive a motion to dismiss" (quoting *Wilson v. Hewlett-Packard Co.*, 668 F.3d

7  1136, 1145 (9th Cir. 2012) (internal quotations omitted)); *Henryhand v. Dorel Juvenile Grp., Inc.*,

8  No. CV1700180SJOAGRX, 2017 WL 7806590, at *1 (C.D. Cal. Oct. 5, 2017) (holding that even

9  if the plaintiffs had pointed "to an actionable affirmative misrepresentation," they must

10  sufficiently allege that the defendant "*was aware of a defect at the time of sale*, which is required

11  for claims sounding in fraud to survive dismissal" (emphases added)).  Plantronics has "no duty

12  to disclose facts of which it was unaware."  *In re Sony Grand Wega KDF-E A10/A20 Series Rear*

13  *Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1095 (S.D. Cal. 2010).

14      Plaintiff does not and cannot sufficiently allege Plantronics was aware of any defects.

15  Plaintiff attempts to substantiate his claim by citing to consumer reviews posted on Plantronics'

16  and Amazon.com's website.  FAC ¶¶ 25–34.  Most of these reviews could not possibly have

17  given Plantronics' pre-sale knowledge of any purported defect because they were not posted until

18  after plaintiff bought his Headphones in early 2015.  Only nine of the cited reviews were posted

19  before plaintiff's purchase.  And plaintiff is incorrect regarding the publication date for at least

20  one of the reviews he alleges was posted before he purchased his Headphones.  In paragraph 31

21  of the FAC, plaintiff alleges that comment "a" was published in 2014.  FAC ¶ 31(a).  However,

22  this comment was actually posted on April 18, 2015, after plaintiff purchased his Headphones.

23  Sanchez Decl. ¶ 5.  Moreover, this consumer requested and received replacement Headphones

24  and posted a follow-up review after receiving the replacement, stating: "My replacement was

25  successful and fairly quick. So far the battery life of my headphones have been exceeding my

26  expectations. . . ." (5 Star Review posted on Plantronics' website on May 4, 2015).  *Id.*  This is

27

28  *Neu v. Terminix Int'l, Inc.*, No. 07-cv-6472, 2008 WL 2951390, at *3-4 (N.D. Cal. July 24, 2008)
(same).

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

1    just one example of why reliance on consumer reviews is unreliable and does not prove any

2    alleged battery defect with the Headphones.

3        But even taking all of plaintiff's allegations at face value and disregarding when the

4    reviews were posted, they still do not support a claim.  It is axiomatic that anonymous postings on

5    the internet are not a reliable source of information, and plaintiff alleges no facts indicating that

6    he has any basis for concluding that the postings are legitimate or accurate.  And even accepting

7    the truthfulness of the unsubstantiated postings, they establish neither the existence of a defect nor

8    Plantronics' knowledge of any defect.  *See Henryhand v. Dorel Juvenile Grp., Inc.*, No.

9    CV1700180SJOAGRX, 2017 WL 7806590, at *6 (C.D. Cal. Oct. 5, 2017) (finding the consumer

10   reviews the plaintiff relied on "do not plausibly establish [the defendant's] pre-sale knowledge of

11   the alleged defect"); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 n.9 (N.D. Cal.

12   2008) ("Random anecdotal examples of disgruntled customers posting their views on websites at

13   an unknown time is not enough to impute knowledge upon defendants."); *Baba v. Hewlett-

14   Packard Co.*, No. CV 09-05946 RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011)

15   ("Awareness of a few customer complaints . . . does not establish knowledge of an alleged

16   defect.").  In the context of the more than one million Headphones sold during the relevant

17   period, a small number of unverified instances of alleged defects from unknown causes does not

18   come close to showing either a defect or Plantronics' knowledge.  To the contrary, it only

19   confirms the absence of any defect that could require disclosure.

20       In *Berenblat v. Apple, Inc.*, No. 08-4969 JF (PVT), 2010 WL 1460297 (N.D. Cal. Apr. 9,

21   2010), the plaintiffs relied on customer complaints as evidence that Apple knew of a defect.  *See

22   id.* at *9.  The plaintiff alleged that there were over 350 complaints to Apple by the time plaintiff

23   acquired his computer, far more than the number of complaints plaintiff has identified here.  *See

24   id.* at *8. But the court nonetheless dismissed the case on the ground that a customer complaint

25   and knowledge of a defect were not the same: "[T]he complaints posted on Apple's consumer

26   website [only] *establish the fact that some consumers were complaining.*  By themselves they are

27   insufficient to show that Apple had knowledge that the memory slot *in fact was defective* and

28   sought to conceal that knowledge from consumers."  *Id.* at *9 (emphases added).  The same is

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

1    true here.  Plaintiff's allegation that there is some unknown number of consumer complaints does

2    not show Plantronics knew of a defect.[3]

3         If the Court were to place any weight on consumer reviews as evidence of the existence or

4    non-existence of a defect, there are many more positive four- and five-star reviews from

5    consumers praising the Headphones than there are negative reviews.  Sanchez Decl. ¶ 6.  Many of

6    these reviews demonstrate that consumers were satisfied with the Headphone's battery life and

7    moisture resistance:[4]

8
     (1) "Perfect for the gym, running, cycling. Comfortable, good sound, **good battery life** and
9        easy to use." (emphases added) (5 Star Review, Plantronics.com).

10   (2) "I bought the blue one for my wife and the green one for myself. **I found it to be [as] sweat
        proof as they say**. The Sound is great and it didn't bounce up and down behind my head."
11       (emphases added) (5 Star Review, Plantronics.com).

12   (3) "Before I bought Plantronics, I [was] using Jabra for about 6 months . I went through 3
        headsets in the period. They would keep malfunctioning for a multitude of reasons. So I
13       tried Plantronics and immediately I noticed a difference. The blue tooth connection was
        faster, the quality of the sound is more crisp and **the battery lasts twice as long** . It's
14       definitely worth the extra money ." (emphases added) (5 Star Review, Plantronics.com).

15

16   [3]     *See also Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2015 WL 4967535, at *11 (N.D.
     Cal. Aug. 20, 2015) (finding the plaintiff failed to "allege that Defendants had knowledge of any
17   product defect either at the time of sale, or when any allegedly false representations were made"
     when the plaintiff's "sole allegation regarding Defendant's knowledge of a defect" were
18   "numerous complaints"); *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM PJWX,
     2014 WL 5017843, at *10 (C.D. Cal. Oct. 3, 2014) (finding insufficient to establish knowledge an
19   allegation that defendant received "numerous . . . complaints" from consumers about the alleged
     defect); *Grodzitsky v. Am. Honda Motor Co.,* No. 2:12-CV-1142-SVW-PLA, 2013 WL 690822,
20   at *6 (C.D. Cal. Feb. 19, 2013) (rejecting "knowledge" and "duty to disclose" allegations
     premised on claim that Honda knew of a defect based on "pre-release testing data, early consumer
21   complaints to Honda and dealers, testing done in response to complaints, replacement part sales
     data, aggregate data from Honda dealers, and other internal sources."); *Rice v. Sunbeam*, No. CV
22   12-7923-CAS-(AJWx), 2013 WL 146270, at *7-8 (C.D. Cal. Jan. 7, 2013) (finding allegations
     that defendant had previously demanded consumers return their defective products, had received
23   unspecified customer service/warranty service call center records for returns and/or complaints,
     and "numerous individual letters and communications sent by members of the Class" insufficient
24   to allege knowledge under the CLRA).
25
     [4] The Court may consider these consumer reviews for purposes of the motion to dismiss because
26   plaintiff references consumer reviews in the FAC.  Although plaintiff does not reference these
     five star reviews in the FAC, it would be appropriate for the court to consider them in order to
27   prevent plaintiff from selectively quoting only a few consumer reviews while omitting the many
     consumer reviews that defeat his claim.
28

Motion to Dismiss First Amended Complaint
                                        Case No. 5:18-cv-05626

(4) "Light weight. Comfy fit. Good looking. **Looooong [sic] lasting battery**. They fit so flush to my ears that you can[']t even tell I'm wearing headphones when you look at me head on. I'm happily buying an extra pair as a backup. Keep up the good work, favorite headphones ever." (emphases added) (5 Star Review, Plantronics.com).

(5) "I've been using the BackBeat FIT for about 8 months now and believe it is one of the few truly excellent products I've come across lately. It simply works, is lightweight, and has great audio while allowing in ambient noise (for safety). The **battery life is terrific too, I charge it once or maybe twice a week but it still gets me through all my workouts and long runs** -- and that's only because I charge when it tells me the battery level is "medium." I just ran my first marathon, and the BackBeat FIT stayed comfortable and functional the entire time." (emphases added) (5 Star Review, Plantronics.com).

(6) "Love these headphones. Sleek and comfortable. You can do any activity with them and forget you're wearing them. Great sound quality, awesome wireless range and **long battery life**." (emphases added) (5 Star Review, Plantronics.com).

(7) "Confortables [sic], Easy, Nice sound, **Battery up to 8 hours** and fast at charging. Just nice!" (emphases added) (5 Star Review, Plantronics.com).

(8) "I mean, this was the best choice of earphones in my entire life. Wireless for a good big distance even through walls. I do hovering with them, I dance with them. Can't imagine life without them. No cable, nothing is destroyed in teo [sic] months, so even[though] they are more expensive, but their lifespan is quite long :) And **I am more than satisfied with its battery**." (emphases added) (5 Star Review, Plantronics.com).

(9) "The best sports headphones I have ever used. They stay in place while running, don't interfere with my bike helmet, with **long battery life**." (emphases added) (5 Star Review, Plantronics.com).

(10) "I've had mine 1 year.  The fit is excellent and they stay in my ear. **The battery lasts a very long time.  I only charge them once a week on average**. I love that they do not cancel out sound.  This is great when I'm running on the road. I did have to send mine back after 8 months because they stopped working but they were exchanged without hesitation as long as I had proof of purchase." (emphases added) (5 Star Review, Plantronics.com).

(11) "I am a runner logging about 30-40 miles per week. I have been through almost every headset out there. I have used the BackBeat FiT for several runs now **and I am very impressed with the quality of the sound and length of battery time. I typically get around 8 hours of run time before I recharge them**. The headset is lightweight and the earbuds fit securely in my ears. I have not had any issues with them falling out of my ears or bouncing when I run. The earbuds rotate to give a more custom and comfortable fit. I barely realize I am wearing them. The controls are easy to learn and simple to use while running. I am able to take phone calls, listen to my music and use Siri completely hands free while I run with no annoying cord hanging down. **The headset has a flexible rubber casing that is sweatproof and folds up easily to throw in my gym bag**. My previous headset had a rechargeable battery that was large and obvious behind my head. I can't tell you where the battery is in the BackBeat FIT, it has a thin sporty profile. Love it!" (emphases added) (5 Star Review, Plantronics.com).

(12)  "[V]ery impressed with this product so far! Stays in your ears and has AWESOME sound quality. Also, **through tons of sweat, rain, and grime, they never quit**!" (emphases added) (5 Star Review, Plantronics.com).

(13)  "This [sic] headphones are great for me and sound awesome. I[']ve been using them for about two months now. I bought them from Amazon. They have great sound quality and a **good battery life. I normally have to charge them about once a week on Sunday and I[']m running three days a week**. All of my firmware upgrades have been easy. So far I have nothing but good things to say about these headphones." (emphases added) (5 Star Review, Plantronics.com).

*Id.* ¶ 4.

Moreover, for some of the negative reviews plaintiff cites, there were follow-up reviews posted after the consumer received a replacement demonstrating that consumers were satisfied with their replacement.  For example, plaintiff relies on an Amazon.com review from December 25, 2015.  *See* FAC ¶ 33(e).  But he omits that in that same review the consumer wrote that he received a replacement and was satisfied with the battery life of the replacement: "Original review from late December is below. I'm happy to say Verizon made it an easy exchange and the replacement set has been great. . . . Battery life is as expected and comparable to my old Motorola SD-10."  (December 25, 2014 Amazon.com review).  Sanchez Decl. ¶ 3.  Thus, if the Court were to place any weight on consumer reviews, it would have to take into consideration all reviews, and the many more positive reviews demonstrate customer satisfaction with the Headphone's battery life and moisture resistance and negates plaintiff's theory of a systematic defect.

Plaintiff's other conclusory allegation, that "upon information and belief" Plantronics "continuously received broken headphones," and "should have known" of the alleged defect from "multiple sources" is equally deficient.  FAC ¶¶ 5, 34, 158.  Plaintiff alleges no facts regarding the number of Headphones returned to Plantronics.  Nor does he allege when Plantronics received the alleged broken Headphones or the reason the Headphones broke.  Similarly, plaintiff does not identify any data or facts regarding the alleged "testing" that would show a systematic defect.  *See id.* ¶ 5.  All he offers is that Plantronics has received some unknown number of Headphones that are "broken" for some unknown reason, and that there is allegedly some "testing data" that would show a systematic defect.  All these allegations are conclusory and insufficient to satisfy the

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

1    heightened pleading standard of Rule 9(b).  *See In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp.

2    3d 888, 908 (N.D. Cal. 2018) (finding that the plaintiff's allegation that the "[d]efendant knew (or

3    exercising due diligence should have known) that the Phones were defective at the time of sale"

4    was conclusory, and the complaint did "not contain sufficient factual matter to make that

5    inference plausible").

6           In short, plaintiff has not satisfied the heightened pleading requirement under Federal Rule

7    of Civil Procedure 9(b) to maintain his claims based in fraud.  Plaintiff has not alleged facts

8    sufficient to show Plantronics knew of any alleged defect, nor stated with particularity the alleged

9    defects in the Headphones.  Accordingly, he fails to state a valid claim under the CLRA, UCL,

10   and common law fraud.

11   **IV.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE A**

12   **DEFECT.**

13          The foregoing assumes that plaintiff adequately alleged that the Plantronics Headphones

14   were defective.  In fact, however, none of the facts in the complaint show that the Headphones

15   contain any defect that could give rise to a duty to disclose.  This is an additional reason to

16   dismiss the complaint.

17           As explained above, plaintiff alleges no facts about the design of the product or its

18   manufacturing process.  Instead, plaintiff speculates "upon information and belief" that either the

19   alleged "flimsy plastics used to protect the Headphones' batteries from moisture were

20   insufficient" or "the inadequate acquisition, installation, construction and manufacture of the

21   rechargeable batteries" caused the alleged systematic battery failure.  FAC ¶ 29.  This conclusory

22   speculation is not sufficient.  *See Wilson*, 668 F.3d at 1144 (affirming the district court's

23   dismissal of the complaint finding the plaintiffs did not allege sufficient facts to support

24   allegation of design defect even though the plaintiffs described in "detail" how the "component

25   that connects the power jack to the motherboard" was "fragile" resulting in the laptop overheating

26   and catching fire).  Nor does plaintiff allege any facts showing a causal connection between the

27   Headphones being exposed to sweat or water and the battery failing.  Without this information (or

28   other facts showing the existence of a defect), no basis exists for concluding that the Headphones

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

1    have any defect that must be disclosed.  *See Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F.

2    Supp. 1467, 1471 (C.D. Cal. 1991) ("It is well settled that fraud [a]llegations based on

3    information and belief do not satisfy the particularity requirement of Rule 9(b) unless the

4    complaint sets forth the facts on which the belief is founded." (internal quotations and citation

5    omitted)).

6         Plaintiff cannot evade his burden to allege the required facts simply by stating that testing

7    data "is unavailable to Plaintiff without discovery."  FAC ¶ 29.  If the Headphones really were

8    defective, nothing prevented plaintiff from alleging facts showing as much.  He does not need any

9    discovery to do so.  The Headphones can easily be purchased, and he and his counsel easily could

10   have conducted whatever pre-filing investigation he needed (including obtaining an expert

11   analysis) to verify that the Headphones are in fact defective and identify the nature of the defect.

12   He needed nothing from Plantronics to do any of this.  Before filing suit, he was obligated to

13   conduct that investigation.  The law does not—and should not—permit a plaintiff to file a lawsuit

14   and impose on the courts and the defendant the enormous burden and expense of refuting even a

15   meritless claim when the plaintiff has not done even the most basic spadework necessary to

16   establish the claim.  *Bly–Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (requirements

17   of Rule 9(b) serve "'to deter the filing of complaints as a pretext for the discovery of unknown

18   wrongs . . . and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and

19   society enormous social and economic costs absent some factual basis'"); *Morici v. Hashfast*

20   *Technologies LLC*, No. 5:14-CV-24  00087-EJD, 2015 WL 906005, at *3 (N.D. Cal. Feb. 27,

21   2015) (heightened pleading "'requires the plaintiff to conduct a precomplaint investigation in

22   sufficient depth to assure that the charge of fraud is responsible and supported, rather than

23   defamatory and extortionate'"); *see also In re Nexus 6P*, 293 F. Supp. 3d at 909–10 (finding the

24   plaintiffs did "not adequately allege[] that [the defendants] had knowledge of the defects at the

25   time that [the plaintiff] purchased their phones" because the plaintiffs must allege "facts in

26   support of knowledge" and "[c]ontrary to [the plaintiffs'] suggestion, the allegation that

27   'Defendants had superior knowledge and access to the relevant facts,' . . . does not equate to an

28   allegation that straightforward testing would have revealed the defects").

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

1    The need for adequate pre-suit investigation and factually supported allegations of a

2 defect is especially acute in cases like this because some individual units of a mass-produced

3 product, such as headphones, inevitably will fail for any number of causes other than a product

4 defect.  The possibility of such events occurring is why product manufacturers provide

5 warranties.  Under plaintiff's theory, however, all warranties are pointless (or at least easily

6 evaded) because consumers could disregard the warranty and bring a class action fraud suit for a

7 refund.  Indeed, if plaintiff's theory were accepted, consumers could sue without their product

8 ever having failed or even if the failure was caused by their own misuse.  All they would have to

9 do is allege that there is a possibility of failure (and perhaps that the product purchased by other

10 consumers failed) and be entitled to damages on the theory that the price for all consumers would

11 have been lower.

12    Finding a duty to disclose based on the allegations here would open the door to a new

13 wave of lawsuits.  A plaintiff could allege with respect to almost any mass-produced product that

14 it may fail "after normal usage" (FAC ¶ 4) or that one or more individual units of that product in

15 fact failed prematurely.  But no case of which defendant is aware has found that fact, by itself, is

16 enough to create a duty to disclose.  Reflecting that essentially all products will experience some

17 rate of premature failure (or failure from misuse), the cases that have found a duty to disclose

18 have involved an actual defect in the design of the product, not merely the potential inherent in

19 any product that particular units may wear out prematurely or otherwise not function as intended.

20 *See Punian*, 2016 WL 1029607, at *14 ("[T]he Court is aware of no[] [cases] . . . where a court

21 has found that such an unspecified potential to fail suffices to allege a material product defect.

22 Rather, as Defendants point out, cases finding that a company has a duty to disclose a product

23 defect have identified a particular design or manufacturing defect and described the connection

24 between the defect and the harm to the plaintiff.").  In *Elias v. Hewlett-Packard Co.*, No. 12-CV-

25 00421-LHK, 2014 WL 493034 (N.D. Cal. Feb. 5, 2014), for example, the plaintiff alleged that

26 Hewlett-Packard had installed a 220-watt power supply unit in one of its computer models, when

27 the component parts in that model needed at least 300 watts to operate properly, *id.* at *1.

28 According to the plaintiff, because of this identified design defect, the power supply unit was

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626

1    "incapable of providing adequate power." *Id.* at *4.   In *Herremans*, the plaintiff likewise alleged

2    the existence of an actual, identified design defect—*i.e.*, the sealed ball bearing system in the

3    automobile's water pump was defective because the stress placed on it exceeded engineering

4    limitations.  2014 WL 5017843, at *1; *see also Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136,

5    1143 (9th Cir. 2012) (noting that the "complaint describes the design defect in some detail,"

6    including "that the component that connects the power jack to the motherboard 'was designed in a

7    manner that is exceedingly fragile,' as the connection is supported only by a few pins affixed with

8    solder"); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 917 (N.D. Cal. 2012) (defendant admitted

9    that the formula it used to calculate and display signal strength on cell phones was "totally

10   wrong"); *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 WL 3501715, at *4

11   (N.D. Cal. Aug. 10, 2011) (alleged defect in printer feed "was present 'out of the box' in every

12   8500 Printer 'and manifested on a regular basis when using the ADF regardless of conditions'").

13        Here, unlike these cases, plaintiff has not identified any defect, but only that some

14   unidentified fraction of the more than one million Headphones sold allegedly failed to maintain a

15   charge for unknown reasons allegedly connected to being exposed to some unknown amount of

16   "sweat and/or water."  FAC ¶¶ 6, 39.  For all the complaint reveals, the alleged instances of

17   battery issues could have been due entirely to consumer misuse, to mishandling during shipping,

18   or any other numerous causes.  None of that could possibly give rise to any duty to disclose.

19   Without an actual, identified defect in the Headphones supported by facts, plaintiff has no basis

20   for any claim.  *See Punian*, 2016 WL 1029607, at *15 (dismissing complaint with prejudice

21   finding that the plaintiff had not alleged "the cause of any defect," the "impact" of the alleged the

22   defect, the "likelihood" of the defect, or consumer expectations about the "potential to fail").

23        Plantronics is not aware of any case in which a court has ruled that alleging only a

24   potential to fail, or some instances of failure, is enough to state a valid claim.  *See id.* at *13

25   (because the plaintiff had not alleged the defect was the result "of any systematic design,

26   technical, manufacturing, or other flaw present in all [the products]" his claims failed).  Because

27   that is all plaintiff has done here, his complaint must be dismissed.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the foregoing reasons, plaintiff's FAC should be dismissed.

Dated: February 13, 2019.                    JONES DAY


                                             By: */s/ Darren K. Cottriel*
                                                 Darren K. Cottriel

                                             Counsel for Defendant
                                             PLANTRONICS, INC.

Motion to Dismiss First Amended Complaint
Case No. 5:18-cv-05626