Ronald S. Kravitz (SBN 129704)
James C. Shah (SBN 260435)
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
rkravitz@sfmslaw.com
jshah@sfmslaw.com

Jeffrey S. Goldenberg
GOLDENBERG SCHNEIDER, L.P.A.
One West 4th Street, 18th Floor
Cincinnati, OH 45249
Telephone: (513) 345-8291
Fax: (513) 345-8294
jgoldenberg@gs-legal.com

(Additional Attorneys for Plaintiff Listed on Signature Page)

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PHIL SHIN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PLANTRONICS, INC.,<br><br>Defendant. | Case No. Case No.: 5:18-cv-05626-NC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION CLASS ACTION SETTLEMENT**<br><br>Hon. Nathanael M. Cousins<br><br>DATE: June 3, 2019<br>TIME: 10 am<br>LOCATION: Courtroom 7 |

TO:     THE CLERK OF THE COURT; and

TO:     DEFENDANT PLANTRONICS, INC., AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 3, 2019, at 10 am, or as soon thereafter as the matter may be heard, in Courtroom 7 of this Court, located at 280 South 1st Street, San Jose, CA 95113, before the Honorable Nathanael Cousins, Plaintiff Phil Shin will and hereby does move for preliminary approval of a class action settlement.

This motion will be based on this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Jeffrey S. Goldenberg, the records and files in this action, and on such other matter as may be presented before or at the hearing of the motion. An electronic version of the proposed Order granting preliminary approval to this class action settlement (and the drafts of the class notices) will be provided to the Court's email address as noted in the Northern District of California's Procedural Guidance for Class Actions Settlements, ¶11.

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

III. SETTLEMENT TERMS .......... 5

A. Proposed Settlement Class .......... 5

B. Relief Provided to Class .......... 6

C. Release .......... 9

D. The Notice Plan .......... 9

E. Settlement Timeline .......... 11

IV. ARGUMENT .......... 12

A. The Settlement Class should be preliminarily certified .......... 13

1. The Settlement Class satisfies the requirements of Rule 23(a) .......... 13

2. The Settlement Class satisfies the requirements of Rule 23(b)(3) .......... 15

B. The Settlement is fair, adequate, and reasonable .......... 17

1. Adequate Representation of the Class .......... 18

2. Arm's-Length Negotiation .......... 19

3. Relief Provided to Class .......... 19

4. Equitable Treatment of Class Members .......... 24

C. Procedural Guidance for Class Action Settlements .......... 26

1. Information About the Settlement and Past Distributions .......... 26

2. Settlement Administrator .......... 28

i

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC

Page

3. Notice, Opt-Outs, Objections, and Timeline .............................. 28

4. Attorneys' Fees, Costs, and Service Awards ..............................28

5. Class Action Fairness Act ..................................................29

6. Electronic Versions ........................................................30

V. CONCLUSION ....................................................................30

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Amchem Prods. v. Windsor*,
521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) …………………….. 17

*Balderas v. Massage Envy Franchising, LLC*,
No. 12-CV-06327 NC, 2014 WL 3610945 (N.D. Cal. July 21, 2014) …………….27

*Celano v. Marriott Int'l Inc*.,
242 F.R.D. 544, 548-49 (N.D. Cal. 2007) ……………………………........... 13

*Edwards v. First Am. Corp.,*
798 F.3d 1172, 1182 (9th Cir. 2015) ……………………………………………16

*Edwards v. Nat'l Milk Producers Fed'n*,
No. 11-CV-04766-JSW, 2017 WL 3616638 (N.D. Cal. June 26, 2017) …………..27

*Hanlon v. Chrysler Corp*.,
150 F.3d 1011, 1019 (9th Cir. 1998) ……………………………………………14,16,18,19

*Harris v. Vector Mktg. Corp*.,
No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ……………. 25

*Harris v. Vector Mktg. Corp*.,
No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) …………………25

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig*.,
No. 17-MD-02777-EMC, 2019 WL 536661(N.D. Cal. Feb. 11, 2019) …………..13,14,16,17

*In re MyFord Touch Consumer Litig*.,
No. 13-CV-03072-EMC, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) ………… 23,25,26

*In re Uber FCRA Litig*.,
No. 14-CV-05200-EMC, 2017 WL 2806698 (N.D. Cal. June 29, 2017……………27

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices,& Prods. Liab. Litig*.,
No. 2672 CRB (JSC), 2017 WL 672820 (N.D. Cal. Feb. 16, 2017) ……………….14,16

*Linneman v. Vitamix*,
S.D. Ohio No. 1:15-cv-748 ………………………………………………………..21,27

*Linney v. Cellular Alaska Partnership*,
151 F.3d 1234, 1242 (9th Cir. 1998) ………………………………………………. ..21

**Cases** **Page(s)**

*Nielson v. The Sports Auth.*,
No. C 11-4724 SBA, 2013 WL 3957764 (N.D. Cal. July 29, 2013) ..................19

*O'Connor v. Uber Techs., Inc.*,
No. 13-CV-03826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) .............19

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 615, 624 (9th Cir. 1982) ..........................................................20

*Staton v. Boeing Co.*,
327 F.3d 938, 977 (9th Cir. 2003) .......................................................... 25

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273, 335 (3d Cir. 2011) .......................................................... 17

*Viceral v. Mistras Grp., Inc.*,
No. 15-CV-02198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ............. 26

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011)...........................14

*Zamora Jordan v. Nationstar Mortg., LLC*,
No. 2:14-CV-0175-TOR, 2019 WL 1966112 (E.D. Wash. May 2, 2019) ........... 24

**Other Authorities**

Fed. R. Civ. P. 23(a)(1)-(4) ............................................................... 13

Fed. R. Civ. P. 23(a)(2) ........................................................................13

Fed. R. Civ. P. 23(a)(3) ........................................................................14

Fed. R. Civ. P. 23(a)(4) ........................................................................15

Fed. R. Civ. P. 23(b)(3)........................................................................ 16

Fed. R. Civ. P. 23(e) ........................................................................... 12

Fed. R. Civ. P. 23(e)(2) ........................................................................18

Fed. R. Civ. P. 23(e)(2)(A) ...................................................................18

iv

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC

**Other Authorities** **Page(s)**

Fed. R. Civ. P. 23(e)(2)(B) .................................................................. 19

Fed. R. Civ. P. 23(e)(2)(C) .................................................................. 20

28 U.S.C. § 1715(b) .................................................................. 30

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (3d ed. 1998) ................................ 16

Manual for Complex Litigation § 21.632 (4th ed. 2004) ...................................... 12

v

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC

## I. INTRODUCTION

Plaintiff Shin filed this action on his own behalf and on behalf of the 1,271,000 consumers who purchased BackBeat FIT wireless sport headphones ("Headphones") manufactured by Defendant Plantronics, Inc. ("Plantronics" or "Defendant") prior to September 2018. Plantronics marketed the Headphones as "sweatproof" and "waterproof," and as offering "up to 8 hours" of listening time on a single charge. Plaintiff alleges that the Headphones do not live up to these representations because they contain a battery defect causing rapidly diminishing battery life and eventual failure to retain a charge. Based on these allegations, Plaintiff filed this suit asserting various warranty and consumer fraud-based claims. Plantronics strenuously denies Plaintiff's allegations and has asserted numerous defenses to Plaintiff's claims.

Recognizing the risks and costs of ongoing litigation, Plaintiff and Defendant engaged in extensive arm's-length settlement negotiations with the assistance of a respected third-party mediator Martin Quinn, Esq. of JAMS in San Francisco. After nearly two and a half months of hard-fought negotiations, the Parties reached an agreement to fully resolve the dispute. The details of the proposed settlement are set forth in the Class Action Settlement Agreement and Release ("Agreement"), attached as Exhibit 1. The proposed settlement generally allows any purchaser who: (1) files a claim; (2) attests that he or she experienced battery charging issues; and (3) either submits proof of purchase information (e.g., receipt) or proof of purchase information is obtained by Class Counsel from third-party retailers or is provided by Defendant, will be eligible to receive a $25 payment. Those purchasers who also provide documentation (or such documentation is provided by Plantronics) proving that they previously made a written complaint of the charging issues will be eligible to receive a larger, $50 payment. Purchasers who only recently purchased the Headphones (and therefore may

not have experienced the defect yet) will receive a one-year limited extended warranty. These are all valuable settlement benefits.

The proposed settlement was reached when the Parties understood the strengths and weaknesses of their respective positions. Plaintiff, through his counsel, conducted an extensive investigation of his claims, filed an original complaint, an amended complaint, briefed a motion to dismiss, and undertook significant fact discovery including working with a world-renowned battery expert. Based upon his evaluation of the facts and applicable law and his recognition of the substantial risk and expense of continued litigation, Plaintiff submits that the proposed Settlement is in the best interests of the Class and will provide an immediate meaningful recovery.

At this time, Plaintiff requests that the Court grant preliminary approval of the proposed Settlement so that notice may be provided to the Class. Given the substantial benefits available to Class Members under the Settlement, and the risks in establishing Defendant's liability, proving damages, and certifying a contested nationwide class, Plaintiff respectfully submits that the proposed Settlement reflected in the Agreement is fair, reasonable, and adequate, and represents an outstanding result, as further described below.

## II. FACTUAL BACKGROUND

On September 13, 2018, Plaintiff Phil Shin commenced this action by filing a Class Action Complaint [Doc. 1] against Defendant challenging the marketing and sale of the Headphones manufactured by Plantronics. Plaintiff subsequently filed the operative First Amended Class Action Complaint ("FAC") [Doc. 35] on December 14, 2018. Plaintiff alleges, among other things, that: (i) Defendant represented, advertised and marketed the Headphones as, inter alia, "waterproof", "sweatproof" and providing "up to 8 hours" of wireless listening time from a single charge; (ii) said

representations, advertising and marketing statements were false and misleading because the Headphones are neither sweatproof nor waterproof and do not last up to eight hours of listening time on a single charge; (iii) the Headphones contain one or more defects that cause the battery life to diminish and eventually stop retaining a charge after normal usage, especially when the Headphones are exposed to sweat or water; and (iv) Plaintiff and all other consumers who purchased the Headphones have suffered damages because had they known the truth they would not have purchased the Headphones or would have paid less for the Headphones.

Based on these allegations, Plaintiff asserts claims for: (a) Breach of Express Warranty – Magnuson Moss Warranty Act; (b) Breach of Implied Warranty – Magnuson Moss Warranty Act; (c) Breach Express Warranty; (d) Breach of Implied Warranty of Merchantability – California Song-Beverly Act; (e) Breach of Implied Warranty of Fitness for a Particular Purpose; (f) Violation of California's Consumer Legal Remedies Act, California Civil Code § 1750 et seq.; (g) Violation of California's Unfair Competition Law, California Business & Professions Code § 17200 et seq.; and (h) Common Law Fraud. The FAC seeks certification of a nationwide class of purchasers of the Headphones.

Plantronics denies the allegations and claims, and has asserted substantial defenses to Plaintiff's claims, including that: (i) the Headphones are not defective in any respect; (ii) the Headphones were tested and qualified to be waterproof, sweatproof and providing up to 8 hours of listing time, as represented; (iii) Plantronics did not fail to disclose any material defect in the Headphones; (iv) Plaintiff's and the putative class's exclusive remedy for any defective Headphones is the Limited Warranty; (v) Plantronics fully complied with the Limited Warranty for the Headphones; (vi) Plaintiff failed to comply with the Limited Warranty and/or failed to submit a timely

warranty claim for his Headphones; (vii) Plaintiff failed to provide pre-suit notice to Plantronics, such that his warranty claims are barred; (viii) Plaintiff fails to allege sufficient facts in the FAC to state any valid claims against Plantronics; (ix) Plaintiff and the putative class did not suffer any losses or actual injury whatsoever; and (x) certification of any class, let alone a nationwide class, is not appropriate.

On January 23, 2019, the Parties engaged in private mediation before Martin Quinn, Esq. of JAMS in San Francisco. The Parties made substantial progress but were not able to fully resolve the dispute at the mediation. With the aid of the mediator, the Parties continued to engage in extensive settlement discussions.

On February 13, 2019, Plantronics filed a motion to dismiss [Doc. 40] the FAC, seeking dismissal of the entire complaint and each cause of action therein. Thereafter, the Parties fully briefed the motion to dismiss, and the Court heard oral argument on March 27, 2019. From January 23, 2019 through March 28, 2019, with the motion to dismiss pending, the Parties continued to engage in extensive settlement discussions with the aid of the mediator. On March 28, 2019 the Parties reached agreement in principal and the Parties' counsel signed a written Memorandum of Understanding outlining the terms of the agreement, attached as Exhibit 2.

On March 29, 2018, the Parties informed the Court that they had reached a settlement in principal to resolve this matter on a national class-wide basis, and on April 5, 2019 the Parties filed a Joint Notice of Class Action Settlement [Doc. 50] with the Court. Before reaching a settlement and entering into the Agreement: (1) the Parties engaged in informal discovery and sharing of information regarding the design, development and testing of the Headphones; (2) Plaintiff's counsel engaged an independent expert to conduct testing of the Headphones and batteries used in the Headphones; and

4

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC

(3) the Parties engaged in numerous arm's-length settlement negotiations, including two-months of mediation efforts and discussions under the direction and guidance of Martin Quinn, Esq. as a mediator. *Declaration of Jeffrey S. Goldenberg in Support of Motion for Preliminary Approval of Class Action Settlement* (*Goldenberg Dec.*), ¶¶6, 11 filed concurrently. Plaintiff and Class Counsel have reviewed and analyzed the information Defendant furnished and information obtained through their own investigation; consulted with their own expert who conducted testing of the Headphones and batteries used in the Headphones; examined and considered the benefits to be provided to the Class Members under the Settlement provided for in this Agreement; and considered the laws of the several States and the claims that could be asserted under those laws.

Plaintiff and Class Counsel believe the Settlement is fair, adequate, reasonable, and in the best interests of the Class Members, taking into account the benefits provided to the Class Members through the terms of the Settlement, the risks of continued litigation and possible trial and appeals, and the length of time and the costs that would be required to complete the litigation. *Id.* at ¶13. The Parties agreed on the benefits to the Settlement Class described in this Agreement before negotiating the provisions of this Agreement and before negotiating attorneys' fees and expenses and the payment of a Service Award to the named Plaintiff. *Id*. at ¶15.

Plaintiff and Class Counsel acknowledge and agree that this Agreement constitutes a compromise of disputed claims and that it is their desire and intention that the Lawsuit be settled and dismissed, on the merits and with prejudice, and that the Released Claims be finally and fully settled and dismissed, subject to and according to the terms and conditions set forth in the Agreement.

## III. SETTLEMENT TERMS

### A. Proposed Settlement Class

The proposed Settlement Class is defined as:

> All Persons domiciled within the United States and its territories who purchased at retail Plantronics BackBeat FIT wireless headphones, version Genesis or 16M,[1] between April 1, 2014 and the Notice Date (currently August 16, 2019). Excluded from the Class is Defendant and its officers, directors and employees; Class Counsel and their partners, associates, lawyers, and employees; and the judicial officers and their immediate family members and associated Court staff assigned to this case.

Agreement § 3.8.

**B. Relief Provided to Class**

Under the Agreement, member of the Settlement Class ("Class Members") may obtain one of the following three alternative benefits:

<u>Alternative 1: Extended Limited Warranty – Agreement § 6.2</u>

Class Members who purchased their Headphones on or after January 1, 2018 may opt to receive a 12-month limited warranty extension on the Headphones, with the 12-month extension beginning to run from the Effective Date of the Settlement (the "Extended Warranty").[2] *See generally* Agreement § 6.2. Approximately 300,000 Class Members purchased the Headphones on or after January 1, 2018. *Goldenberg Dec.*, ¶9. Class Members who purchased Headphones before January 1, 2018 are not eligible for the Extended Warranty, and instead are limited to claiming benefits under either Alternative 2 or Alternative 3. Class Members qualifying for the Extended Warranty do not need to submit a Claim Form. But they must comply with the on-line warranty claim process on Plantronics website, at www.plantronics.com, and must return to Plantronics their existing

---

[1] BackBeat FIT wireless headphones, version Genesis or 16M, were manufactured by Plantronics prior to September 2018.

[2] To the extent that the original limited warranty applicable to the original purchase of the Headphones (the "Original Limited Warranty") has not expired by the Effective Date, the Extended Warranty shall be in addition to and take effect after expiration of the Original Limited Warranty. Agreement, § 6.3.

6

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC

Headphones for which they are making the warranty claim. To qualify for coverage under the Extended Warranty, the warranty claim must be based on a battery charging issue, and the Class Member must attest under penalty of perjury that he, she or it (i) has not filed a warranty claim on the Headphones previously; (ii) did not previously receive a replacement set of Headphones from any source; and (iii) did not previously receive a refund from Plantronics or the retailer from which the Class Member purchased the Headphones for all or any portion of the purchase price of the Headphones.[3] Importantly, the 300,000 Class Members who are eligible for the Extended Warranty may forego the Extended Warranty and file a claim for the $50 or $25 cash benefit provided by Alternative 2 or Alternative 3 (discussed below) in lieu of the Extended Warranty.

Class Members who are not qualified to receive the Extended Warranty (by reason of having purchased their Headphones prior to January 1, 2018), and Class Members who are qualified to receive the Extended Warranty but who elect to forego the Extended Warranty, may qualify to receive a cash payment from Defendant under either Alternative 2 or Alternative 3, but not both.

Alternative 2: $50 Cash Payment – Agreement § 6.6.1

A Class Member may opt to receive a $50 payment under this Alternative 2 if the Class Member timely submits to the Settlement Administrator (1) a properly completed Claim Form, (2) either submits proof of purchase information (e.g., receipt) or proof of purchase information is obtained by Class Counsel from third-party retailers or is provided by Defendant, (3) evidence that the Class Member had, prior to September 12, 2018, made a written claim or complaint that the Headphones' were defective or did not function properly due to battery charging issues, and (4) an

[3] Plantronics is entitled to rebut the Class Member's assertion of no prior warranty claim, replacement Headphones or refund with verifiable evidence to the contrary. Agreement, § 6.2(c).

attestation under penalty of perjury that the Class Member's Headphones experienced a battery charging issue but the Class Member did not previously receive a replacement set of Headphones or a refund for all or any portion of their purchase price.[4] A Class Member who fully complies with all of the above requirements shall receive a payment of $50.[5] There shall be a limit of two (2) claims per Class Member.[6]

Alternative 3: $25 Cash Payment – Agreement § 6.6.2

A Class Member may opt to receive a $25 payment under this Alternative 3 if the Class Member timely submits to the Settlement Administrator (1) a properly completed Claim Form, (2) proof of purchase information (e.g., receipt) or proof of purchase information is obtained by Class Counsel from third-party retailers or is provided by Defendant, and (3) an attestation under penalty of perjury that the Class Member's Headphones malfunctioned or failed to work properly due to a battery charging issue, and the Class Member did not previously receive a replacement set of Headphones or a refund for all or any portion of their purchase price.[7] There shall be a limit of two (2) claims per Class Member. Notwithstanding the foregoing, a Class Member who previously received a replacement set of Headphones from any source may make one, and only one, claim for benefits under this Alternative 3 benefit, and such Class Member is excused from the requirement to attest under penalty of perjury that they did not previously receive a replacement set of Headphones from any source.

---

[4] Plantronics is entitled to rebut the Class Member's assertion of no prior replacement Headphones or refund with verifiable evidence to the contrary provided to the Settlement Administrator. Agreement, § 6.6.1(d).

[5] If the Proof of Purchase shows that the Claimant purchased the Headphones for less than $50, the Claimant's recovery is limited to the price paid for the Headphones. Agreement, § 6.6.1.

[6] Claimants seeking the $50 payment who do not satisfy those requirements (e.g., fail to provide support demonstrating previous complaint), will automatically be evaluated to determine if they satisfy the requirements for the $25 benefit.

[7] Plantronics is entitled to rebut the Claimant's assertion of no prior replacement Headphones or refund with verifiable evidence to the contrary presented to the Settlement Administrator. Agreement, § 6.6.2(c).

8

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC

**C. Release**

Under the Agreement, Class Members who do not timely and validly exclude themselves from the Settlement will release claims against Defendant and other Released Parties, which include Defendant's past, present, and future officers, directors, board members, agents, representatives, servants, employees, attorneys, and insurers. Agreement §§ 3.36, 11.1. The release is tailored to the claims at issue in this litigation. For example, it does not cover claims for personal injury or emotional distress for Class Members other than Plaintiff Shin. Agreement § 11.1.

**D. The Notice Plan**

Under the Agreement, the Settlement Administrator will send by U.S. mail or electronic mail (email) a copy of the Short Form Settlement Notice to every Class Member who reasonably can be identified from Plantronics' records or the records of third-party retailers. Agreement § 7.3.[8] The Settlement Administrator shall design a notice (both for delivery by U.S. mail and by email) that will enhance the chance it will be opened or viewed by the Class Member. The issuance of Class Notice shall begin on July 26, 2019 and shall be completed by August 16, 2019.[9] Agreement § 3.22. A copy of the Short Form Settlement Notice to be sent by U.S. mail is attached as Exhibit 3. A copy of the Short Form Settlement Notice to be sent by email is attached as Exhibit 4. To the extent practicable, the Settlement Administrator shall send or cause to be sent a copy of the Settlement Notice by email to every Class Member whose email address or other electronic contact information Defendant can

[8] Plantronics will identify Class Members by looking for persons who directly purchased Headphones from Plantronics on the plantronics.com website as well as those who registered their Headphones with Plantronics. In addition, Plantronics will provide to Class Counsel a list of the top 10 retailers of the Headphones. Class Counsel may seek an order from the Court to issue subpoenas directing the retailers to produce contact information and certain purchase related information for Headphone purchasers or forward the Short Form Settlement Notice to their customers. Agreement, § 7.3d.

[9] See Proc. Guidance for Class Action Sett. ¶ 3.

9

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC

reasonably identify in its records or third-party retailers provide. If the Settlement Administrator can identify more email addresses or other electronic contact information for Class Members by performing an email address lookup or similar exercise, the Settlement Administrator shall include such costs in the Administration and Notice Expenses. For all other Class Members for whom or which a mailing address, but no email address or other electronic means of contact, can reasonably be identified, the Settlement Administrator shall send or cause to be sent a copy of the Short Form Settlement Notice by U.S. mail.

At approximately the same time the Settlement Administrator mails and emails the Short Form Settlement Notices, the Settlement Administrator will implement the supplemental Publication Notice program designed by the Settlement Administrator to enhance the direct mail and email notice program by using publication, media and digital sources to satisfy the requirements of Rule 23 and due process. The goal of this Publication Notice is to design a program that will reach at least 70% of the Class Members. Highlights of this supplemental Publication Notice program may include:

1. Digital online campaigns on Facebook, Google and Yahoo
2. Sponsored search text ads on search engines such as Google, Yahoo, and Bing
3. Digital and social media campaign involving Google Display Networks; Google AdWords (Banner Ads; Newsfeed Ads; and YouTube Digital)
4. Press Releases

To facilitate the efficient administration of this Settlement, and to promote the provision of benefits pursuant to this Settlement, the Settlement Administrator will establish a Settlement Website that enables Class Members to: (a) Identify important settlement related dates and deadlines; (b) Read

10

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC

the full Settlement Notice[10], FAQs, and important case documents (e.g. Settlement Agreement, Order Granting Preliminary Approval, Class Counsel's Motion Requesting Attorneys' Fees); (c) Complete, review, and submit a Claim Form online as well as to submit any supporting documentation online; (d) Print the completed Claim Form for signature by the Class Member and mailing to the Settlement Administrator along with any required documentary support; (e) View a toll-free telephone number Class Members may call to obtain general information about the Settlement and this Agreement; (f) Obtain updates on the status of the Settlement; (g) Obtain information on how to object or opt out of the Settlement; and (h) Receive instruction on how to access the case docket via PACER or view it in person at any of the court's locations.

The full Settlement Notice, Short Form Settlement Notices, FAQs, Claim Forms, supplemental Publication Notice program, and Settlement Website are designed to provide information sufficient to inform Class Members of: (a) the contact information for class counsel to answer questions; (b) the essential terms and benefits of this Agreement; (c) the process to obtain the settlement benefits; (d) the process to object or opt out of the Settlement; and (e) the appropriate means for obtaining additional information regarding the Agreement and the lawsuit.

**E. Settlement Timeline**

A proposed list of Settlement-related dates and deadlines includes the following:

1. Issue Subpoenas to Third-Party Retailers – Within 10 days of the Court's Order Granting Preliminary Approval to Class Action Settlement

2. Establish Settlement Website and Toll-Free Number – Prior to July 26, 2019

[10] The full Settlement Notice is attached as Exhibit 5 and will be posted on the Settlement Website and will be mailed to any Class Member who requests a copy.

3. Mailing and Emailing Class Notice – Begins on July 26, 2019 and is to be completed by August 16, 2019
4. Class Counsel's Fee and Expense Motion – September 16, 2019
5. Claim Deadline – October 31, 2019
6. Objection Deadline – October 4, 2019
7. Opt-Out Deadline – October 4, 2019
8. Plaintiff's Response to Objections and Update to the Court – October 18, 2019
9. Fairness Hearing – On or around November 4, 2019

## IV. ARGUMENT

Under Fed. R. Civ. P. 23(e), "claims, issues, or defenses of … a class proposed to be certified for purposes of settlement … may be settled … only with the court's approval." *Id.* Court approval of class action settlements occurs in three steps: (1) preliminary approval of the proposed settlement, including (if the class has not already been certified) conditional certification of the class for settlement purposes; (2) notice to the class providing them an opportunity to object or exclude themselves from the settlement; and (3) a final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement. *See* Fed.R.Civ.P. 23(e); Manual for Complex Litigation § 21.632 (4th ed. 2004).

At the first step, commonly referred to as the preliminary approval stage, the settling parties request approval from the court to send notice to the class. In order to earn court approval to send notice to the class, the parties must provide "sufficient" information for the court to determine that it will "likely" be able to (1) certify the class for purposes of judgment, Fed.R.Civ.P. 23(e)(1)(B)(ii), and (2) approve the settlement, Fed.R.Civ.P. 23(e)(1)(B)(i). In other words, when a court is presented

with a motion for preliminary approval of a class action settlement, it must first evaluate whether certification of a settlement class is appropriate under Federal Rule of Civil Procedure 23(a) and (b), and then determine whether the settlement is fundamentally fair, adequate, and reasonable. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig*., No. 17-MD-02777-EMC, 2019 WL 536661, at *5 (N.D. Cal. Feb. 11, 2019).

**A. The Settlement Class should be preliminarily certified.**

The proposed Settlement Class satisfies the requirements of Rule 23(a) and (b)(3).[11]

1. <u>The Settlement Class satisfies the requirements of Rule 23(a).</u>

Rule 23(a) provides that a class action is proper only if four requirements are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. See Fed.R.Civ.P. 23(a)(1)-(4). In the instant case, there is more than enough showing that all four requirements have been satisfied for purposes of preliminary approval.

*Numerosity*. Rule 23(a)(1) requires the class to be so numerous that joinder of all parties is impracticable. The proposed Class has approximately 1.3 million members, which satisfies the numerosity requirement. *Goldenberg Dec*., ¶9; *See Celano v. Marriott Int'l Inc*., 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has at least 40 members).

*Commonality*. Class issues are sufficiently common where "there are questions of fact and law which are common to the class." Fed.R.Civ.P. 23(a)(2). The common question "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

[11] For settlement purposes only, Plantronics does not dispute this characterization. Agreement § 4.1. If the proposed Settlement is not approved, Plantronics reserves its right to contest class certification. *Id*.

13

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, the commonality requirement is satisfied because Plaintiff's claims, and the claims of the Class Members, "arise from [defendants'] common course of conduct." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig*., 2019 WL 536661, at *6. Common legal and factual questions include: (a) whether the Headphones are defective; (b) whether Plantronics' claim that the Headphones are "sweatproof" and "waterproof" is deceptive; (c) whether Plantronics' claim that the Headphones have "up to 8 hours" of battery life is deceptive; (d) whether Plantronics' claim that the Headphones are durable enough to withstand "working out" is deceptive; (e) whether Plantronics breached express warranties relating to the Headphones including the Headphones have "up to 8 hours" of use on a single charge and the Headphones are "sweatproof" and "waterproof"; (f) whether Plantronics breached the implied warranty of merchantability relating to the Headphones; (g) whether Plantronics breached the implied warranty of fitness for particular purpose relating to the Headphones; and (h) whether Plantronics engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective Headphones. These common questions satisfy commonality.

*Typicality*. To meet the requirement for typicality "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "Typicality 'assure[s] that the interest of the named representative aligns with the interests of the class.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig*., No. 2672 CRB (JSC),

2017 WL 672820, at *7, (N.D. Cal. Feb. 16, 2017). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Plaintiff's claims are typical of the claims of the Class Members whom he seeks to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiff and each Class Member have been similarly affected by Plantronics' conduct. As alleged in the Complaint, Plaintiff and all members of the Class purchased defective Headphones that render the Headphones either worthless or worth substantially less than the price paid to purchase the Headphones. In addition, Plaintiff asserts that Plantronics' alleged conduct that gave rise to the claims of Plaintiff and Class Members (i.e. delivering defective Headphones, making false claims with respect to the Headphones, and breaching warranties respecting the Headphones) is the same for all Class Members. Typicality requires nothing more.

*Adequacy of Representation*. Finally, Rule 23(a)(4) requires that the named plaintiff, who seek to be a class representative, "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. In this case, there is no evidence of any conflicts of interest. Further, Plaintiff has retained counsel competent and experienced in complex class action litigation (including product defect class action litigation), and Plaintiff is committed to prosecute this action vigorously. Therefore, the interests of the Class Members will be fairly and adequately protected. *Goldenberg Dec*., ¶10.

2. <u>The Settlement Class satisfies the requirements of Rule 23(b)(3).</u>

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and … a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Both requirements are satisfied here.

The first requirement is that "[c]ommon issues predominate over individual issues" meaning "the common issues 'represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (3d ed. 1998)).

In this case, a common overarching issue is whether Plantronics engaged in unfair, unconscionable, or deceptive trade practices by selling and marketing defective Headphones. Plaintiff asserts that liability can be determined on a class wide basis because there is a single common issue which drives the litigation. In other words, the predominance requirement is satisfied because "[Defendant] perpetrated the same fraud in the same manner against all Class Members." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig*., 2019 WL 536661, at *7.

The second requirement is that class settlement must be superior to other means of resolution. Fed.R.Civ.P. 23(b)(3). The superiority requirement focuses on "whether maintenance of [the] litigation as a class action is efficient and whether it is fair." *Volkswagen*, 2017 WL 672820, at *8. Here, the amount of recovery is relatively small and unlikely to be pursued by individuals. Because "litigation costs would dwarf potential recovery," a class action and a class settlement are the superior means of adjudicating this matter. *Hanlon*, 150 F.3d at 1022.

Notably, manageability of a class action for purposes of Rule 23(b)(3) is not an issue in the settlement context because the case will not be tried. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."); *Sullivan v. DB Invs., Inc*., 667 F.3d 273, 335 (3d Cir. 2011) ("A key question in a litigation class action is manageability – how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof. But the settlement class presents no management problems because the case will not be tried."); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig*., 2019 WL 536661, at *7 (similar).

Because the case meets the requirements for Rule 23(a) and Rule 23(b)(3), certification for settlement purposes is appropriate. The next step is to determine whether the Court is likely to approve the Settlement as fundamentally fair, adequate, and reasonable.

**B. The Settlement is fair, adequate, and reasonable.**

Before the 2018 amendments, Rule 23(e)(2) required that the court approve a class action settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Because the rule was silent as to what factors courts should consider in deciding whether a settlement was "fair, reasonable, and adequate," courts developed their own individual tests, with some judicial circuits having a dozen or more factors to consider. In the Ninth Circuit, courts have traditionally considered (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience

and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See, e.g., Hanlon*, 150 F.3d at 1026.

However, Rule 23 was recently amended to provide a simpler and more uniform approach to the process. The new language in Rule 23(e)(2) sets forth foundational considerations that courts are now directed to utilize when considering whether a settlement can be approved. These factors include whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed.R.Civ.P. 23(e)(2). According to the official advisory committee notes, the goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.

1. <u>Adequate Representation of the Class</u>

The first factor asks whether "the class representatives and class counsel have adequately represented the class." Fed.R.Civ.P. 23(e)(2)(A). As previously discussed in connection with the class certification analysis, there is nothing in the record to suggest there are any conflicts of interest between Plaintiff, Counsel, or the Class Members. Moreover, Plaintiff and Counsel are committed to prosecute this action vigorously. *Goldenberg Dec*., ¶10. Accordingly, this factor weighs in favor of preliminary approval.

2. Arm's-Length Negotiation

The second factor asks whether "the [settlement] proposal was negotiated at arm's length." Fed.R.Civ.P. 23(e)(2)(B). Here, the Parties arrived at the settlement Agreement after multiple rounds of negotiations overseen by the experienced and respected mediator Martin Quinn, Esq. of JAMS in San Francisco. *Id.* at ¶6; *See O'Connor v. Uber Techs., Inc*., No. 13-CV-03826-EMC, 2019 WL 1437101, at *7 (N.D. Cal. Mar. 29, 2019) (arm's-length factor weighed in favor of preliminary approval where settlement was reached with assistance of experienced mediators); *Nielson v. The Sports Auth*., No. C 11-4724 SBA, 2013 WL 3957764, at *5 (N.D. Cal. July 29, 2013) ("[T]he settlement resulted from non-collusive negotiations; i.e., a mediation before Mark Rudy, a respected employment attorney and mediator."). Moreover, as discussed above, the Parties have conducted extensive informal discovery and sharing of information regarding the design, development and testing of the Headphones. *Id*. at ¶¶6, 12. Having analyzed the information furnished by Defendant, consulted with an expert who has conducted testing of the Headphones, and carefully scrutinized the terms of the proposed Settlement, Class Counsel and Plaintiff believes it is fair, adequate, and reasonable. *Id*. at ¶13; *See Hanlon*, 150 F.3d at 1027 (recognizing that courts should give "proper deference to the private consensual decision of the parties"). Accordingly, this factor also weighs in favor of approval.

3. Relief Provided to Class

The next factor requires the Court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-

19

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC

member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed.R.Civ.P. 23(e)(2)(C).

*Costs, Risks, and Delay of Trial and Appeal.* Given the circumstances of this case, it is difficult to predict the precise range and likelihood of class-wide recovery had this case proceeded to a litigated outcome. Although Plaintiff remains confident in his ability to prevail on his claims, Plantronics has presented substantial defenses. According to Plantronics, the Headphones are not defective, Plantronics has fully complied with its limited warranty for the Headphones, and Plaintiffs have not been damaged or harmed in any way, or at all.[12]

Moreover, regardless of the result at trial (assuming some of Plaintiff's claims survived Defendant's pending motion to dismiss), a lengthy and expensive trial and appeals process would be expected in this case. Absent settlement, Plantronics certainly could appeal any significant award of damages on numerous grounds, including liability, the propriety of adjudicating liability and damages on a class-wide basis, and the measure of damages. Likewise, it is certainly possible that the outcome of a trial or appeal would result in no recovery or substantially reduced damages for Class Members. There are inherent risks facing the Class in pursuing this consumer class action and the very real potential for recovering little or nothing if this case proceeded through trial and appeal.

"[T]he very essence of a settlement is compromise." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Accordingly,

[12] More specifically, Plantronics asserts that: (i) the Headphones are not defective in any respect; (ii) the Headphones were tested and qualified to be waterproof, sweatproof and providing up to 8 hours of listing time, as represented; (iii) Plantronics did not fail to disclose any material defect in the Headphones; (iv) Plaintiff's and the putative class's exclusive remedy for any defective Headphones is the Limited Warranty; (v) Plantronics fully complied with the Limited Warranty for the Headphones; (vi) Plaintiff failed to comply with the Limited Warranty and/or failed to submit a timely warranty claim for his Headphones; (vii) Plaintiff failed to provide pre-suit notice to Plantronics, such that his warranty claims are barred; (viii) Plaintiff fails to allege sufficient facts in the First Amended Complaint to state any valid claims against Plantronics; and (ix) Plaintiff and the putative class did not suffer any losses or actual injury whatsoever.

20

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC

"[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

*Method of Distributing Relief to the Class*. The Settlement Agreement provides a straightforward process for distributing the Settlement benefits to Class Members. Under the Agreement, the Settlement Administrator will provide mailed or electronic notice to every Class Member whose home address or email address can be reasonably identified from Plantronics' records or the records of Plantronics' 10 largest third-party retailers. To assist in this process, Plaintiff respectfully requests that the Court enter the Order attached as Exhibit 6, which requires the third-party retailers to provide contact information and product purchase information for their customers who purchased the Headphones so that direct notice may be sent to as many Class Members as possible. This information will also assist Class Members in satisfying the proof of purchase requirement. Based on Class Counsel's experience with a similar order entered in connection with another recent consumer product settlement, Class Counsel anticipate that a substantial percentage of the Class will receive direct notice through this campaign. *See* discussion of *Linneman v. Vitamix, infra*.

Class Members who purchased Headphones on or after January 1, 2018, will receive a 12-month limited warranty extension in lieu of filing a claim for cash benefits. These Class Members (approximately 300,000 Class Members purchased their Headphones on or after January 1, 2018) do not need to submit a Claim Form to qualify for the Extended Limited Warranty.

21

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC

Alternatively, Class Members can opt to submit a claim for cash payment. If the Class Member submits a valid claim supported by (1) proof of purchase and (2) an attestation that their Headphones experienced a battery issue, he or she will receive a $25 cash payment. Proof of purchase can be satisfied by the Class Member submitting evidence (e.g., a receipt) or by purchase information obtained by Class Counsel from third party retailers (e.g., Amazon, Best Buy) or obtained directly from Plantronics. The Settlement Administrator will review all claims, as necessary, to determine whether the information obtained from third-party retailers satisfies the proof of purchase requirement. Class Members who purchased multiple sets of Headphones can receive up to two $25 payments. Class Members who previously received a set of Replacement Headphones are limited to one $25 payment.

Class Members who satisfy the requirements for a $25 payment, but who can further provide evidence that he or she made a contemporaneous written complaint regarding the Headphones' batteries, are eligible to receive a larger, $50 cash payment. The prior written claim or complaint must have been made prior to the date of Plaintiff filing the original complaint in this case (September 12, 2018). Agreement, § 6.6.1(c). The complaint must relate to a failure or malfunction of the Headphones consistent with the allegations in the Complaint regarding battery charging issues. For example, a general negative review on Amazon.com or Plantronics.com would not suffice, but a negative review that specifically references a battery charging issue consistent with the allegations in the Complaint would suffice.[13]

[13] Claims submitted for the $50 cash payment that do not satisfy the prior complaint standard automatically will be evaluated by the Settlement Administrator for the $25 cash payment.

22

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC

The proposed method of distributing relief to the Class under the Settlement Agreement is eminently reasonable. Indeed, the notice procedure is designed to encourage a high claim rate, and it will take Class Members minimal time to submit a claim.

*Attorneys' Fee*s. Under the Agreement, Plantronics has agreed to pay, subject to Court approval, Plaintiff's attorneys' fees and expenses of up to a maximum of six hundred fifty thousand dollars ($650,000). The Parties negotiated and reached agreement on the attorneys' fees and expenses only after reaching agreement on all other material terms of Settlement in this matter. *Goldenberg Dec*., ¶8.

As discussed in more detail below, Plaintiff intends to ask the Court to award approximately $625,000 in attorneys' fees and to request reimbursement for approximately $25,000 in expenses. Class Counsel's current lodestar as of May 23, 2019 is $726,000. And, Class Counsel anticipates spending between 150 and 200 additional hours drafting the final approval and attorney fee motion, handling questions from Class Members, supervising and dealing with the Settlement Administrator, and travelling to and from and preparing for the preliminary and final approval hearings. Thus, the requested fee will result in a negative multiplier. Although the Court may scrutinize Class Counsel's billing records when Plaintiff separately moves for fees and costs later in the approval process, Class Counsel have sufficiently established the reasonableness of their request for purposes of preliminary approval. *See, e.g., In re MyFord Touch Consumer Litig*., No. 13-CV-03072-EMC, 2019 WL 1411510, at *7 (N.D. Cal. Mar. 28, 2019).

23

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC

As for the timing of the fees, the Agreement requires Plantronics to pay the fees within 10 days following the Effective Date[14] or following the entry of a final, non-appealable order awarding fees or service awards, whichever is later. Agreement § 10.5. *See, e.g., Zamora Jordan v. Nationstar Mortg., LLC*, No. 2:14-CV-0175-TOR, 2019 WL 1966112, at *5 (E.D. Wash. May 2, 2019) (factor weighs in favor of approving settlement where fees "will be paid only after the Settlement is finally approved by the Court, the time for any appeal has elapsed, or any appeal has been resolved, and the Settlement has taken effect").

*Any agreement required to be identified under Rule 23(e)(3).* Rule 23(e)(3) requires Parties seeking approval to file a statement identifying "any agreement made in connection with the settlement." This requirement is directed "at related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others. Doubts should be resolved in favor of identification." Committee Note to the 2003 amendments to Rule 23. Class Counsel states that no ancillary agreements exist outside the terms of the Agreement and the Memorandum of Understanding, both of which have been provided to the Court. *Goldenberg Dec*., ¶8. This factor too weighs in favor of granting preliminary approval.

4. Equitable Treatment of Class Members.

The Settlement Agreement does not improperly grant preferential treatment to certain segments of the class. Under the claims process, all Class Members whose claim satisfies the proof

[14] "Effective Date" means the first date that is three (3) business days after all the following have occurred: (a) the Court has entered an order granting final approval of the Settlement in accordance with the terms of this Agreement; (b) the time for any challenge to the Settlement, both in the Court and on appeal, has lapsed; and (c) the Settlement has become final, either because no timely challenge was made to it or because any timely challenge has been finally adjudicated and rejected in such a manner as to affirm the Final Approval Order approving the Settlement. Agreement § 3.15.

24

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC

of purchase requirement and attest under penalty of perjury that they experienced problems with their Headphones' batteries are eligible to receive $25. Those Class Members who can additionally prove that they previously complained of the battery problems are eligible to receive $50. *Cf. In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2019 WL 1411510, at *11 (N.D. Cal. Mar. 28, 2019) ("Under the claims process, Class Members who sought more repairs receive a greater recovery because the number of repair attempts serves as a proxy for the seriousness of their MFT defects."). And those Class Members who only recently purchased the Headphones (since January 1, 2018) and therefore may not yet have experienced battery issues are provided the option to receive the Extended Warranty protecting against the risk that the Headphones will experience battery issues in the future.[15] In other words, variation in awards primarily turns on the relative strength or weakness of the evidence supporting each Class Member's claim for damages.

Plantronics has agreed, subject to Court approval, to pay Plaintiff a Service Award of $5,000. "[T]he Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). Moreover, Courts agree that $5,000 is a reasonable amount for a service award. *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("[I]ncentive payments of $10,000 or $25,000 are quite high and ... as a general matter, $5,000 is a reasonable amount."). Plaintiff Shin has devoted significant time and effort to this

---

[15] Class Members who seek replacement headphones pursuant to the Extended Warranty shall receive Plantronics Backbeat FIT 2100 wireless headphones. These headphones are not identical to the Headphones at issue in the litigation as the Backbeat FIT 2100 wireless headphones are a different design and contain batteries from a different battery manufacturer. *Goldenberg Dec.*, ¶9.

25

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC

case, including communicating with Class Counsel, providing documents to Class Counsel, reviewing the class action complaints, assessing and discussing the mediation process and progress, and preparing declarations to support approval of this Settlement. Accordingly, this factor too weighs in favor of granting preliminary approval. *See In re MyFord Touch Consumer Litig*., 2019 WL 1411510, at *12 (equitable treatment of class members factor weighs in favor of preliminary approval even though named plaintiffs sought service awards of $9,000).

**C. Procedural Guidance for Class Action Settlements**

The Northern District of California has issued Procedural Guidance for Class Actions Settlements ("PGCAS"), which sets forth 12 categories of information that should be provided in support of preliminary approval "where applicable." *See* PGCAS, ¶¶1-12.

1. Information About the Settlement and Past Distributions – PGCAS, ¶¶1, 11

There are no substantial differences between the Settlement Class and the class proposed in the operative FAC. *Id*. at ¶1(a). Moreover, the scope of the Settlement release is reasonably tailored to the claims of the FAC. *Id*. at ¶1(c); Agreement, § 11. As for the anticipated class recovery under the Settlement and potential class recovery if Plaintiff had fully prevailed, *id*. at ¶1(e), it is difficult to estimate the maximum amount of damages recoverable in a successful litigation. *Goldenberg Dec*., ¶18. But Plantronics has sold approximately 1.3 million Headphones, which generally sold for between $60 and $90. *Goldenberg Dec*., ¶¶9, 18. Accordingly, a Class Member who opts for Alternative 2 ($50 payment) will recover roughly between 63% and 83% of the purchase price. Likewise, a Class Member who opts for Alternative 3 ($25 payment) will recover roughly between 31% and 42% of the purchase price. This recovery compares favorably to other class action settlements approved in this District. *See, e.g., Viceral v. Mistras Grp., Inc*., No. 15-CV-02198-EMC,

2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (approving settlement representing 8.1% of the full verdict value in recognition of the "daunting" risks plaintiffs faced in proving their case).[16] For those Class Members who make a claim for the replacement headphones[17] pursuant to the Extended Warranty benefit (Alternative 1), those Class Members arguably recover 100% under this Settlement.

Lastly, although estimating claims rates necessarily entails a degree of speculation, Class Counsel's recent experience with another consumer products claims-made settlement suggests that the Court can expect a claim rate that may approach as high as 10% of Class Members who receive direct notice (mail or email). In *Linneman v. Vitamix Corporation*, S.D. Ohio No. 1:15-cv-748, plaintiff consumers filed suit alleging that the defendants' high-end blenders were defective in that the blenders deposited small black flecks of Teflon into the blended food materials. In that recent settlement (www.blendersettlement.com), approximately 10% of the class members who received direct email or U.S. mail notice filed a claim. *See Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL 3616638, at *4 (N.D. Cal. June 26, 2017) (describing 5% claims rate as "relatively good" and supporting finding that notice was reasonable and fair).

Other relevant information about the Vitamix settlement is as follows:

| | |
|---|---|
| Number of class members | Approximately 5 to 6 million |
| Number of class members to whom notice was sent | Approximately 4 million |
| Method of notice | Direct mail and email (addresses obtained from Vitamix and from third-party retailers). A |

[16] *See also In re Uber FCRA Litig.*, No. 14-CV-05200-EMC, 2017 WL 2806698, at *7 (N.D. Cal. June 29, 2017) (approving a settlement worth less than 7.5% of the possible verdict where the class faced "substantial risks and obstacles" to prevailing at trial, as well as "the inevitable expense of litigating a large, complex case through trial"); *Balderas v. Massage Envy Franchising, LLC*, No. 12-CV-06327 NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (approving a settlement representing 5% of the maximum recovery in light of "the strengths of plaintiff's case and the risks and expense of continued litigation").

[17] The Replacement Headphones are a new design and utilize batteries from a different manufacturer than the Headphones that are the subject of this litigation. Goldenberg Dec., ¶9.

| | |
|---|---|
| | supplemental digital notice campaign was also utilized, and publication notice was placed in two magazines with national circulation. |
| Percentage of claims forms submitted | Approximately 10% of those to whom class notice was directly mailed or emailed filed a claim. |
| Average recovery per claimant | Option 1: Installation of non-flecking replacement blade assembly option valued at ~$105;<br>Option 2: $70 gift card option. |
| Amount distributed to *cy pres* | None. |
| Administrative costs | Approximately $2.1 million. |
| Attorneys' fees and costs | To be determined. |

2. Settlement Administrator – PGCAS, ¶2

The Parties recently received detailed settlement administration proposals from five different providers. The Parties are continuing to evaluate each proposal and will update the Court at the proposed June 3rd hearing as to which settlement administrator they recommend and why. Defendant has agreed to cover the notice and administration costs for this Settlement.

3. Notice, Opt-Outs, Objections, and Timeline – PGCAS, ¶¶3-5, 9.

The manner and content of the proposed Notice Plan was designed to comply with Rule 23, due process, and District's Procedural Guidance for Class Action Settlements, ¶¶3-5. Notably, Class Counsel intends to identify Class Members through Defendant's records and "third-party data sources," and keep the Settlement Website regularly updated. *Id*. This is demonstrated by the proposed notices attached as exhibits hereto and the proposed settlement timeline discussed previously.

4. Attorneys' Fees, Costs, and Service Awards – PGCAS, ¶¶6-7

The Court will not approve a request for attorneys' fees, costs, and a service award for Mr. Shin until the final approval hearing. Class Counsel anticipate requesting a fee award of approximately $625,000. Counsel's lodestar as of mid-May 2019 is $726,151. Counsel estimates that it will incur an additional 150 to 200 hours drafting the final approval and attorney fee motion, handling questions from Class Members, supervising and dealing with the Settlement Administrator, and traveling to and from and preparing for the preliminary and final approval hearings. Therefore, it is apparent that Class Counsel will be requesting a fee that results in a negative multiplier. Class Counsel also anticipate requesting at least $25,000 in expense reimbursements.

A firm by firm summary of Class Counsel's hours to date are set forth below:

| Firm | Hours | Lodestar |
|---|---|---|
| Goldenberg Schneider | 660 | $376,977 |
| Markovits, Stock & DeMarco | 317 | $146,699 |
| The Finney Law Firm | 274 | $121,585 |
| Shepherd, Finkelman, Miller & Shah | 109 | $80,890 |
| TOTAL | 1,360 | $726,151 |

Counsel intends to request that the Court award Plaintiff Shin a service award in the amount of $5,000.

More detailed and thorough records will be provided to the Court when Class Counsel files its Motion Requesting Fees, Expense Reimbursement, and Service Award on September 16, 2019.

5. Class Action Fairness Act – PGCAS, ¶10

29

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC

This action is subject to the requirements of the Class Action Fairness Act of 2005 ("CAFA"), which requires that, within ten days of the filing of a proposed settlement, each defendant serve a notice containing certain required information upon the appropriate State and Federal officials. 28 U.S.C. § 1715(b). Under the Agreement, Defendant has agreed to comply with this requirement no later than ten days after Plaintiff files this motion. Agreement, ¶7.9.

6. Electronic Versions – PGCAS, ¶11

Simultaneously with the filing of this Notice of Motion, Plaintiff has submitted electronic versions (Microsoft Word) of a proposed order and proposed class notices to the Court's email address.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that Court grant Plaintiff's motion for preliminary approval.

Dated: May 24, 2019

By: */s/ Jeffrey S. Goldenberg*
Jeffrey S. Goldenberg
Todd B. Naylor
Goldenberg Schneider, L.P.A.
One West 4th Street, 18th Floor
Cincinnati, OH 45202
Telephone: (513) 345-8291
Fax: (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com

Ronald S. Kravitz (SBN 129704)
James C. Shah (SBN 260435)
Shepherd, Finkelman, Miller & Shah, LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 429-5272
Facsimile: (866) 300-7367

rkravitz@sfmslaw.com
jshah@sfmslaw.com

W.B. Markovits
Paul M. DeMarco
Justin C. Walker
Terence R. Coates
Markovits, Stock & DeMarco LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 665-0200
Fax: (513) 665-0219
bmarkovits@msdlegal.com
pdemarco@msdlegal.com
jwalker@msdlegal.com
tcoates@msdlegal.com

31

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:18-cv-05626-NC